### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEVEN H. HALL,** | ) | |
| *Plaintiff,* | ) | **Civil Action No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY.** | ) | **February 27, 2018** |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

**I.    PRELIMINARY STATEMENT**

The Plaintiff seeks judicial review of decision of the Merit Systems Protection Board (MSPB) - *Steven H. Hall v. Department of Homeland Security,* MSPB Docket No. DC-0752-15-063-I-1 (June 23, 2016) and *Steven H. Hall v. Department of Homeland Security,* MSPB Docket No. DC-0752-14-243-I-1 12, (June 23, 2016). Plaintiff also alleges discrimination (failure to reasonably accommodate) and retaliation under the Rehabilitation Act, 29 USC § 791 et seq.

**II.    JURISDICTION AND VENUE**

The Plaintiff need not exhaust administrative remedies under the Rehabilitation Act. See *Minter v. District of Columbia*, 62 F. Supp. 3d 149, 164-65 (D.D.C. 2014)("This Court agrees, and holds that 'the ADA's exhaustion requirement does not apply to the Rehabilitation Act[.]'")

This District Court has subject matter jurisdiction over the Plaintiff's mixed-case pursuant to 5 U.S.C. § 7703(b)(2)" See *Perry v. MSPB*, 137 S. Ct. 1975, 1978, 198 L. Ed. 2d 527, 533, 2017 U.S. LEXIS 4044 (June 23, 2017)( "*Kloeckner* announced a clear rule: '[M]ixed cases shall be filed in district court.'") citing *Kloeckner v. Solis*, 133 S. Ct. 596, 603-04, 607, 184 L. Ed. 2d 433 (2012).

Venue is proper pursuant to 28 U.S.C.1391(b)(2) and 28 U.S.C.1391(e)(1)(B).

### III.   LIMITATIONS PERIOD

The Rehabilitation Act, like many federal civil rights statutes, does not contain a statute of limitations, and thus the limitations period must be borrowed from the state cause of action most analogous to a plaintiff's claim. See, e.g., *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054-55 (8th Cir. 2003)(discussing the framework for borrowing state statute of limitations). In the District, this limitations period is three years, and thus a three-year limitations period is applied in Rehabilitation Act cases. See *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 11-12 (D.D.C. 2007)

### IV.   PARTIES

Plaintiff Steven H. Hall is a former GS-12 employee of the Defendant Agency. Mr. Hall currently resides at 7141 Chesapeake Village Boulevard, Chesapeake Beach, Maryland, 20731.

Defendant Department of Homeland Security (DHS) is an agency of the United States Government, headquartered at 3801 Nebraska Ave NW, Washington, DC 20016. Defendant DHS has a mailing address of 245 Murray Lane SW Washington, DC 20528-0075.

### V.   FACTS

1.   On September 12, 2012, the Agency received a request for reasonable accommodation from Steven H. Hall.

2.   Hall's request was assigned the DHS Case Number – HQ-12-RA-0031.

3.   Due to impairments that substantially limited Hall's major life activities (including breathing) he requested work from an alternative location other than the Saint Elizabeth's office, located at 2710 Martin Luther King Jr. Ave. SE, Washington, D.C. ("St. E's").

4.   On October 15, 2012, the Agency found Hall had shown himself "an individual with a disability" entitled to a reasonable accommodation under the Rehabilitation Act.

5.   The Agency instructed Roy Neigh, Hall's manager, to take steps to comply with the Rehabilitation Act including continued engagement in the interactive process.

6.   On May 13, 2013, the Agency recommended reassignment as Hall's accommodation.

7.   On May 28, 2013, the Agency indefinitely suspended Hall.

8.      The Agency failed or refused to engage in the interactive process with Hall from May 28, 2013 to the present.

9.      In the two-year period after his suspension, Hall filed no less than eleven causes of action:

> MSPB Appeal No. DC-0752-14-0723-I-1
> MSPB Appeal No. DC-0752-15-1063-I-1
> EEOC Complaint No. 570-2013-00245X
> EEOC Complaint No. 570-2013-00968X
> EEOC Complaint No. 570-2014-00583X
> EEOC Complaint Agency No. 000804
> EEOC Complaint Agency No. 23609-2015
> FTCA Administrative Claim No. 186-MGMT-14
> FTCA Administrative Claim No. 215-MGMT-15
> FTCA Administrative Claim No. 216-MGMT-15

10.     On June 8, 2013, Hall hired Rosemary Dettling of the Federal Employee Legal Services Center as his representative for EEOC-related matters.

11.     In two, equal installments on July 27, 2013 and April 1, 2014, Hall paid Dettling a $7000 flat fee for EEOC representation.

12.     The EEOC-related representation agreement between Dettling and Hall provided, "After these fees are paid, Client will not be charged additionally [*sic*] legal fees."

13.     On December 3, 2013, Hall hired Dettling as his representative for MSBP-related matters.

14.     On December 23, 2013, Hall paid Dettling a flat-fee payment of $8,500 for MSPB representation."

15.     The MSPB-related representation agreement between Dettling and Hall provided, "After these fees are paid, Client will not be charged additionally [*sic*] legal fees."

16.     Although her EEOC representation began on June 2, 2013, Dettling's invoice for Hall's EEOC-related work was dated January 1, 2016.

17.     Although MSPB representation began on December 3, 2013, Dettling's invoice for Hall's MSPB-related work was dated January 1, 2016.

18.     Hall first received invoices in August 2016, over three years after he retained Dettling.

19.     Reports of Investigation (ROIs) issued after the investigation of Hall's formal EEOC complaints on October 21, 2013, February 2, 2014, April 14, 2014 and August 19, 2014.

20.     Dettling's invoices make no mention of any attempt to settle Hall's case in the period after the issuances of each of those four ROIs.

21.     On November 3, 2015, the Administrative Judge in Hall's MSPB case Michelle M. Hudson initiated ex parte communication with Dettling.

22.     On November 3, 2015, at 7:22 PM, Dettling texted Hall, "I talk [*sic*] to the judge today. She called me and I called her back. She wanted to talk about settlement."

23.     The Agency was not included in those calls.

24.     On November 3, 2015, at 7:22 PM, Dettling texted Hall regarding AJ Hudson, "She said she didn't think you would win your case. She told me to pass that onto you. She said she could try to get the Agency to take the termination off your record. She insisted that was a good settlement and she did not think she would find in your favor."

25.     AJ Hudson denies communicating ex parte with Dettling.

26.     Dettling and Hall texted from 7:22 PM until 8:01 PM on November 3, 2015.

27.     Hall's MSPB invoice contains no entries, settlement related or other, on November 3, 2015.

28.     On or before November 12, 2015, AJ Hudson communicated ex parte with Agency Counsel Letitia Byers.

29.     During that ex parte communication the "Administrative Judge in this matter suggested that [Byers] contact [Detlling] directly regarding [Hall's] settlement offer to withdraw this appeal in exchange for a "clean paper" resignation," according to Byers.

30.     On November 12, 2015, Dettling communicated with the Agency regarding settlement for the first time since her representation of Hall began on June 8, 2013.

31.     At 3:17:54 PM November 12, 2015, in an e-mail to Byers, FELSC associate Joanne Dekker and Hall, Dettling wrote, "I talked to Mr. Hall about settlement. I told him the judge recommended that we settle for a clean record. He informed me that he does not want to settle for a clean record. He still wants the job, back pay, and attorney fees."

32.     The MSPB invoice Dettling provided to Hall contains no entry for November 12, 2015.

33.     Neither the Agency nor Dettling/FELSC attempted settlement prior to November 12, 2015.

34.     Dettling's invoices first mention settlement on November 20, 2015.

35.     At 11:33 AM, on Saturday November 21, 2015, Dettling texted Hall, "Joanne is saying the judge wants an agreement signed by noon Monday. If you are over 40 you get more time."

36.     At 11:48 AM, the same day, Dettling texted Hall, "The Judge will probably be very annoyed that you said you were going to settlement and back out. I've seen people do this and they end up with nothing."

37.     At 12:04 PM, Hall responded, "I understand the judge wants to rush it, however I want the most cash and the termination dropped."

38.     At 12:16 PM, Dettling responded, "The cash part is not going to increase. The amount they are offering is very high compared to what they offer in other cases."

39.     At 12:23 AM, Hall responded by text, "[F]rom October 2012 to October 2015, [I] lost $240k in salaries."

40.     At 12:09:39 AM, Dettling emailed Byers with Dekker cc-ed and Hall no included:

     . . . After work today, Mr. Hall reached out to me and Ms. Dekker. He said he was grateful the agency was willing to settle. but he had serious reservations about settling without having the termination expunged from his record. While he is currently working at the Department of the Navy, his job is a "not to exceed one year" position. It ends next September 2016. He is very worried that at the end of that term he will be unemployed and will not be able to find a new job. He has a family to support and he is worried about their future.

     As a former federal employee, I know that it is virtually impossible for a fired federal employee to get another federal job when they have a termination in their record.  In fact, it is difficult to get any job, as most private sector employers also ask prospective employees if they have been terminated.

     . . . I can't help but agree with Mr. Hall that it is very important to get the termination out of his record.

     . . . .

     Please consider this. I believe we can agree to other terms that would appease the agency, while allowing Mr. Hall to work again.

41.     On November 23, 2015, at 10:26 AM, Dekker texted Hall, "The Agency is very angry, but is willing to pay $30,000 for attorneys fees and give you a clean record."

42.     On November 23, 2015, at 11:00 AM, Dettling texted Hall "They [the Agency] will give you the clean record or the 55 [thousand dollars] but not both."

43.     On November 23, 2015, at 11:08 AM, Dettling texted Hall, "Do u want to accept the 85 and move on. They are not willing to take [off] the termination."

44.     At 12:38 AM, Hall texted Dettling, "I will take the 85 and move on."

45.     On or before 2:02 PM, Dekker send Hall a copy of the settlement agreement to his work email address.

46.     At 2:16 PM, Hall responded to Dekker by text, "I just received it and will sign and fax it back to you."

47.   The first settlement agreement that Hall received from Dekker and then signed lacked an Older Worker Benefits Protection Act (OWBPA) clause.

48.   To correct that omission, Dekker revised the settlement agreement, adding an OWBPA clause to the agreement.

49.   The OWBPA clause provided that Hall "may revoke this Agreement at any time within seven (7) days after signing it."

50.   Under that provision, Hall had until November 30, 2015 to revoke.

51.   At 2:38 PM, Dekker texted Hall, "I sent a revised one a few minutes ago."

52.   Hall signed the revised version and returned it to Dekker.

53.   Four minutes later Hall inquired by text whether Dekker "received the revised version."

54.   At 2:44 PM, Dekker texted, "Yes. It is printing now. Thanks."

55.   Two minutes later, Hall inquired by text, "About when will I receive both checks."

56.   At 2:58 PM, Dekker responded by text, "With the holiday it's probably going to take at least two weeks."

57.   At some point, Dekker signed the revised agreement.

58.   On November 23, 2015, Hall texted Dettling "I have 7 days to revoke the agreement . . ."

59.   On November 24, 2015, at 7:07 AM, Dettling texted Hall:

   Please stop texting me. When you make a final decision, let me know and we will tell the agency. We are not going to spend more time on this. As I said before, you would be foolish to turn down this settlement. The judge already said she is going to find against you. If you want to go to a hearing fine. Please stop wasting time on this. You don't listen to anything we are saying, so its pointless for us to keep repeating ourselves.

60.   This would not be the last time Dettling would attempt to brow beat a client into settlement.

61.   In March 2016, Dettling verbally berated her clients the Schooleys and trotted out the "the judge card" after they rejected a "joke" settlement Dettling was pushing. See 92 below.

62.   At 7:14 AM, Hall replied, "I will make a final decision NLT [no later than] 11/30/2015."

63.   At 12:20 PM, Dettling texted, "The 7 day clause only applies to age discrimination claims."

64.     At 12:34 PM, the same day, Hall responded to Dettling, "You . . inform[ed] me as [a]bout the Older Worker's Compensation Act . . late Friday night . . . I had seven days to revoke the agreement. After I had signed it and forward to Mr. Dekker then I was provided a revised copy of the agreement. I was will advised and confused to say the least."

65.     At 1:01 PM, Dettling replied to Hall by text, "If you want to give up the money and rescind the agreement we need to get the judge on the phone. . . . When are you available?"

66.     Later, in the course of his MSPB appeal, Hall argued "I had signed the settlement agreement based on the understanding that I could revoke [within] seven days after signing it according to the Older Worker Benefit Act."

67.     Like Dettling on November 24, 2015, the Agency countered that the revocation period would only apply if the appellant claimed he has been discriminated against based on age.

68.     The Board found "the revocation provision was material to the appellant's decision to sign the settlement agreement . . . Based on the plain language of the agreement, the appellant could have revoked the settlement agreement within 7 days of signing it."

69.     But the Board then found that Hall later rescinded his revocation.

70.     Given Hall's later rescission of his timely revocation, by signing the revised settlement agreement at some point between 2:38 PM (when he received it from Dekker) and 2:44 PM (when he returned it to Dekker) on November 23, 2015, Hall resolved and settled his cases.

71.     Board found that Hall was bound by the terms of that settlement agreement.

72.     On November 28, 2015, at 4:39 PM, Hall e-mailed Dettling and Dekker, "Immediately your assistance is no longer required and I am terminating our working relationship."

73.     Hall terminated Dettling and Dekker, five days and roughly two hours after his cases were resolved and settled pursuant to the revised settlement agreement.

74.     The representation agreement that Hall and Dettling signed provides in relevant part:

        The Client can terminate the Attorney. Client relationship at any time. If the Client terminates services prematurely before a resolution has been obtained, Client understands that he/she will be billed for all phone calls, emails, motions, hearing preparation, research, at the Attorney's Laffey rate. Client also understands that, if he/she terminates service before Attorney fees are awarded, he/she will be billed for all work done to the date of the termination at the Attorneys' Laffey rate (prevailing market rate), rather than at the reduced rate offered in Section 3A and 38, above.

75.     Although Hall terminated the services of Dettling, Dekker, and FELSC on November 28, 2015, five days *after* a "resolution" was "obtained" on November 23, 2015, Dettling billed Hall for phone calls, emails, motions, hearing preparation, research, at her Laffey rate.

76.    Dettling was awarded $30,000 in legal fees by the November 23, 2015 settlement agreement.

77.    Hall terminated services on November 28, 2015, five days after attorney fees were awarded.

78.    Although Hall terminated services after attorney's fees were awarded, Dettling later billed Hall for "work done" after the date of termination, November 28, 2015.

79.    Dettling has billed Hall for $111.30 on November 30, 2015; $68.90 for December 1, 2015; $90.10 on December 28, 2015.

80.    Dettling claims that she is not only entitled to keep Hall's flat-fee of $15,500 and the $30,000 in legal fees paid by the Agency, but that she is owed the remaining balance listed on Hall's EEOC invoice ($37,043.00) and Hall's MSPB invoice ($23,225.80).

81.    Given that Hall was paid $50,000 under the settlement agreement, but paid Dettling $15,500 in flat fees, if Hall pays Dettling the remaining balance of $60,268.80 that she claims she is owed, the net amount Hall will receive under the settlement will be a loss of $25,765.80.

82.    Hall settled 11 causes of action $25,755.80 for a net loss of - $2,342.61 per cause of action.

83.    Given that Dettling was paid $30,00 under the November 23, 2015 settlement agreement and was paid $15,500 in flat fees, if Dettling collects the remaining balance of $60,268.80, the total net amount she will receive under the settlement would be $105,268.80.

84.    Dettling has threatened to sue Hall to gain the remaining balance of $60,268.80.

85.    Dettling has threatened to sue Hall despite promising in both their EEOC and MSPB retainer agreements "After these fees are paid, Client will not be charged additional[] legal fees."

86.    On June 23, 2016, the Board held that the Plaintiff's settlement agreement was voluntary:

       The appellant alleges that the administrative judge was biased and conspired with the representatives to pressure him into settling. . . . To support his bias claim, the appellant alleges that the administrative judge and his representative discussed the weakness of his appeal prior to the prehearing conference. . . . In settlement negotiations, administrative judges are permitted to inform the parties of the relative strengths and weaknesses of their cases.

87.    The "Notice to the Appellate Regarding Your Further Review Rights" portion of the Merit System Protection Board's (Board) decision in *Steven H. Hall v. Department of Homeland Security,* MSPB Docket No. DC-0752-14-243-I-1 12 (June 23, 2016) instructed Hall:

       Discrimination and Other Claims: Judicial Action If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. See 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.

88. On February 23, 2015, nine-months before Hall signed the revised settlement agreement, citing 5 U.S.C. § 7703(b)(2) and *Kloeckner v. Solis*, 133 S. Ct. 596, 603-04, 607, 184 L. Ed. 2d 433 (2012) the Merit Systems Protection Board held, in *Caros v. Dep't of Homeland Sec.*, 2015 M.S.P.B. 16, P20, 2015 MSPB LEXIS 1589, *18 (Feb. 23, 2015), "Judicial review of mixed-case appeals lies in a federal district court of competent jurisdiction."

89. Dettling was the Appellant's Representative and the Department of Homeland Security was the Agency in *Caros v. Dep't of Homeland Sec.*

90. Based on *Caros*, on or after February 23, 2015 to the present, both Dettling and the Agency have known that judicial review of mixed-case appeals lies in federal district court.

91. On March 11, 2016, after her clients Wes and Diane Schooley rejected a DISA settlement offer that the Schooleys described as a "joke," Dettling responded by email as follows:

> We are used to you blaming everyone else for your problems. No matter what advice Joanne and I gave you over the year, and how much we encouraged you, you always rejected what we said and accused us of being "dismissive" or negligent. You may be used to talking to people that way, but we are not used to hearing those accusations. . . . When the agency offered a transfer, I was responsible for conveying that offer to her. I never said the offer was great, and never said it was a final offer. I did, however, say that it was a good offer when faced with her longing to get out of her old job. The EEOC judges, who are used to agencies not giving any offers, would view this as a reasonable offer. Instead of even considering it, you lashed out with insulting emails. I am glad you are turning your abuse on another attorney. There is no doubt in my mind that you will be dissatisfied with any attorney you get.

92. On July 15, 2016, Hall filed a Complaint appealing the Board's decisions in *Hall v. DHS,* MSPB Docket No. DC-0752-15-063-I-1 (June 23, 2016) and *Hall v. DHS,* MSPB Docket No. DC-0752-14-243-I-1 12, (June 23, 2016) in D.C. federal district court.

93. Hall's Complaint is listed on the docket of *Steven H. Hall v. Department of Homeland Security, et al.*, Civil Action No. 16-1471 (JEB)(2016) as ECF No. 1.

94. Hall's Complaint contained the Notice to the Appellate Regarding Your Further Review Rights found in the Board's decision in *Steven H. Hall v. Department of Homeland Security.*

95. On August 25, 2016, Judge Boasberg dismissed Hall's Complaint without prejudice based on a "lack of subject matter jurisdiction." See *Steven H. Hall v. Department of Homeland Security, et al.*, Civil Action No. 16-1471 (JEB)(2016),  ECF No. 9.

96. The Agency's Answer to Hall's Complaint was due on September 12, 2016.

97. The Agency did not file an Answer, timely or otherwise.

98. By not filing an Answer, the Agency sidestepped admitting jurisdiction.

99.   On September 28, 2015, the Agency claimed *Franklin v. USPS*, 61 Fed. Appx. 686 (Fed. Cir. 2003) governed Hall's Complaint and that jurisdiction lied with the Federal Circuit.

100.  Based on *Caros v. Dep't of Homeland Sec.*, the Agency knew those claims to be false.

101.  By Shephardizing, the Agency would have found that *Franklin* was held not binding twelve years earlier in *Horn v. United States Dep't of Army*, 284 F. Supp. 2d 1, 9 (D.D.C. 2003).

102.  On September 28, 2015, Dettling claimed the Court had jurisdiction over Hall's case:

Your Honor, in the interest of fairness, there were two MSPB decisions that came out on June 23, 2016.      And in both of those cases the board gave the appellant appeal rights to District Court because he was settling a number of EEO issues and EEO cases. So, I would say that the Court does have jurisdiction over those cases. See September 28, 2016, Status Conference Transcript, p. 8, ln. 6-12.

103.  On October 12, 2015, Hall countered the Agency's claim that *Franklin* governs by arguing that "in fact *Kloeckner* governs."

104.  Although the Agency knew *Kloeckner* governed, the Agency did not concede jurisdiction.

105.  To the utter amazement of Hall and his counsel, on October 12, 2015, Dettling did an about face and reversed her earlier position on jurisdiction, and claimed it lacking. In the midst of a long ad hominem rant against Hall's counsel, Dettling knowingly misrepresented:

T]his person [Hall's counsel Stephens] is not doing his client any good. If he had done any due diligence, he would have noticed, first of all, that there is no subject matter jurisdiction. See October 12, 2016, Status Conference Transcript, p. 16, ln. 13-15.

106.  Based on *Caros v. Dep't of Homeland Sec.*, Dettling knew this claim was untrue.

107.  But because she profited handsomely from the revised settlement agreement, Dettling was determined to prevent a finding of jurisdiction and, in turn, discovery and trial on the merits.

108.  Unless enjoined from doing so, Dettling will try to derail this proceeding with her usual bag of tricks –misrepresentation of law and fact, frivolous pleadings, and ad hominem attacks.

109.  Dettling's knowing failure or refusal to concede jurisdiction multiplied proceedings in *Hall v. Department of Homeland Security, et al.*, Civil Action No. 16-1471 (JEB)(2016).

110.  The Agency's knowing failure or refusal to concede jurisdiction multiplied proceedings in *Hall v. Department of Homeland Security, et al.*, Civil Action No. 16-1471 (JEB)(2016).

111.  On June 23, 2017, the United States Supreme Court reaffirmed "*Kloeckner* announced a clear rule: '[M]ixed cases shall be filed in district court.'" See *Perry v. MSPB*, 137 S. Ct. 1975, 1978, 198 L. Ed. 2d 527, 533, 2017 U.S. LEXIS 4044 (June 23, 2017).

112.     Even after *Perry* issued, the Agency failed or refused to concede jurisdiction in *Hall*.

113.     On or about, November 2, 2017, in ACAB 2016-17/028, an arbitrator's panel denied Hall's request for a refund of his flat fees of $15,500 and awarded Dettling $30,268.80.

114.     Given the arbitrators' award, at the present time, Dettling's net now stands at $75,680.80.

115.     But if Dettling makes good on her threat to sue Hall and thereby collects the remaining balance of 60,268.80, her net profit would be $105,268.80.

116.     These numbers explain why Dekker and Dettling bull-rushed Hall into signing the revised settlement agreement on November 28, 2015 and why Dettling tried to derail *Hall I*.

117.     On February 20, 2017, Hall moved for Sanctions under 28 U.S.C. § 1927 ("Section 1927") against Agency's Counsel and Dettling for multiplying jurisdictional proceedings in *Hall I*.

118.     Judge Boasberg's baseless dismissal of Hall's complaint is a particularly egregious example of the empirically-verified and much-commented-upon hostility that civil rights plaintiffs, particularly ADA/Rehabilitation Act plaintiffs face in Federal District and Circuit Courts.

119.     The familiarity of Hall's counsel Stephens with federal- district and appellate court hostility against the disabled dated back to 2000, when Stephens helped organize the Berkeley Journal of Labor and Employment Law's (BJELL) symposium on Backlash Against the ADA as a law student at the University of California Berkeley School of Law (Boalt Hall).

120.     Boalt Hall's BJELL is the most-widely cited employment law journal in the world.

121.     The BJELL's symposium on backlash against the ADA, the leading such symposium to date, played an important role in the eventual amendment of the ADA by Congress.

122.     But as Judge Boasberg's baseless dismissal in *Hall I* illustrates, Congressional amendment of the ADA has not prevented ADA-hostile judges from wrongly dismissing ADA cases.

123.     The disabled have the same Constitutional due process rights as corporate persons.


## VI.   COMPLAINT ALLEGATIONS

Incorporating herein the factual averments 1-123 above the Plaintiff alleges:

### COUNT I

The Agency has continuously failed or refused, since May 28, 2013, to engage Hall in the

interaction process and to accommodate Hall's disability, through reassignment or otherwise.

## COUNT II

The Agency retaliated against Hall based on his statutorily protected by indefinitely suspending Hall from May 28, 2013 to the present.

## COUNT III

The revised settlement agreement that Hall signed on November 23, 2015 is unconscionable and was signed by Hall under duress and coercion.

## COUNT IV

The Agency retaliated against Hall based on his protected activity by refusing or failing to file an Answer to Hall's Complaint in *Steven H. Hall v. Department of Homeland Security, et al.*

## COUNT V

The Agency retaliated against Hall based on his protected activity by refusing or failing to admit subject matter jurisdiction in *Steven H. Hall v. Department of Homeland Security, et al.*

## COUNT VI

The Agency retaliated against Hall based on his protected activity by preventing Hall from gaining discovery and a trial on the merits in *Steven H. Hall v. Department of Homeland Security.*

## COUNT VII

The Agency retaliated against Hall based on his protected activity by preventing Hall from gaining revocation of the revised settlement agreement in *Hall v. Department of Homeland Security.*

VII.   **REMEDIES**

A.   Order Hall's reinstatement or instatement as a GS-12.

B.   Order the Agency to engage in the interactive process with Hall and his representative and to reasonably accommodate Hall's disability with reassignment.

C.   Award backpay and interest from May 28, 2013 to the present.

D.      Expunge all negative items from Hall's personnel files and records.

E.      Award Hall $300,000 in compensatory damages pursuant to 42 U.S.C. 1981(A)(b).

F.      Find the revised settlement agreement void as unconscionable and signed under duress.

G.      Vacate the Board's June 23, 2016 decisions.

H.      Remand to the Board for proceedings on the merits of Hall's mixed case appeal(s).

I.      Award Hall attorney's fees at the Laffey Matrix rate of the undersigned.

J.      Imposition of Section 1927 Sanctions against any attorney including but not limited to Agency Counsel and Dettling or Dekker who attempts to unreasonably and vexatiously multiply or derail these proceedings with frivolous filings or ad hominem attacks.

K.      Enjoin any third-party participation by Dettling and Dekker or their representatives in this proceeding, including the filing of cross claims or counterclaims or amici curiea briefs.

M.      Disclosure to the Plaintiff, Plaintiff's counsel, the Agency, and its Counsel of any attempt by third parties, including Judge James Boasberg, to interfere with the administration of justice in this case though ex parte communications with the judge assigned to this case.

N.      Enjoin all ex parte communication to the judge assigned to this case from third-parties aside from Dettling and Dekker, including but not limited to Judge James Boasberg.

O.      Imposition of Section 1927 sanctions against any third-party lawyer, including but not limited to Judge Boasberg, who attempts to unreasonably and vexatiously multiply these proceedings with ex parte communication or ad hominem attacks on Hall and his counsel.

P.      Constitutional due process including discovery and a trial on the merits of Counts I - VII.

Q.      A public hearing on judicial misconduct by Judge James Boasberg in *Hall I*.

R.      The creation of a D.C. Circuit Panel to address and remedy the systematic pattern of unfair and discriminatory holdings by D.C. District Court judges in disability cases like *Hall I*.

Respectfully submitted

*/s/ Glenn Stephens*
Glenn Stephens Ph.D., Esq. Bar
No. # 472780
Federal Employees Defense, LLC
1725 I Street NW, Suite 300
Washington, DC 20006
202-258-6521
Drghs3@gmail.com

## CERTIFICATE OF SERVICE

I certify that on February 27, 2018, a copy of the above was e-filed and sent to the parties.

*/s/ **Glenn Stephens***
Glenn Stephens Ph.D.,
Esq. Bar No. # 472780
Federal Employees Defense, LLC
1725 I Street NW, Suite 300
Washington, DC 20006
202-258-6521
Drghs3@gmail.com