# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEVEN H. HALL,

    Plaintiff,

        v.

KIRSTJEN M. NIELSEN, *et al.*,

    Defendants.

Civil Action No. 18-461 (JEB)

## MEMORANDUM OPINION

The Department of Homeland Security terminated Plaintiff Steven Hall's employment following a variety of misconduct allegations, prompting him to retain the legal services of Defendant Rosemary Dettling. Unhappy with the result of the subsequent proceedings, Plaintiff has filed a barrage of suits over the last few years, mostly in a *pro se* capacity, against Dettling and DHS. This is one such case. Dettling alone now moves to dismiss, contending that the doctrine of claim preclusion bars this action against her because she previously prevailed in a substantially similar suit in D.C. Superior Court. The Court agrees and will grant her Motion.

## I. Background

This is not the Court's first foray into the facts underlying Hall's termination and grievance with Dettling. See Hall v. Dep't of Homeland Sec., 219 F. Supp. 3d 112 (D.D.C. 2016), aff'd sub nom. Hall v. Dettling, No. 17-7008, 2017 WL 2348158 (D.C. Cir. May 17, 2017). Because only a summary rehearsal of this saga is necessary to tee up the legal issue in this case, the Court directs readers curious about the full production to its past Opinion.

Beginning in 2010, DHS employed Hall at the GS-12 grade level. See ECF No. 12 (Am. Compl.) at 2. The Agency reported several disciplinary issues with Plaintiff and decided, in

early 2013, to place him on administrative leave.  Id., Exh. N (Facts) at 2–3; ECF No. 28 (Pl. Opp.) at 7.  This action was followed by an indefinite suspension, which culminated in the termination of Hall's employment.  See Am. Compl. Facts at 3.  Plaintiff also reports that, preceding his suspension, he had requested relocation to a new facility because his work site — the St. Elizabeth's building in Southeast D.C. — contained dust that exacerbated his respiratory ailments.  Id. at 1.  Believing his suspension and termination to have been the result of retaliation and discrimination, Hall filed several complaints with the Equal Employment Opportunity Commission and the Merit Systems Protection Board.  Id. at 5.  He hired Dettling to represent him in these matters.  Id.  She in turn sought the assistance of other attorneys contracted with her firm, the Federal Employees Legal Services Center (FELSC).  Id. at 6.

Aided by counsel, Hall eventually signed a settlement agreement with the Agency. Suffice it to say, however, that the path to this resolution was far from smooth.  The record reveals that Hall repeatedly wavered before ultimately agreeing to the settlement, which did not reinstate his employment but did provide for a financial award and attorney fees.  Id. at 6–7.  In the midst of this process, Hall ended his professional relationship with Dettling and her firm.  Id. at 7.  Plaintiff makes no bones about his current dissatisfaction with the deal he entered into. See, e.g., Pl. Opp. at 13–15.

Hall's discontent with his termination, legal representation, and eventual settlement spurred a flurry of lawsuits.  By this Court's count, he has filed eight cases in this jurisdiction. See Nos. 16-846, 16-1471, 16-1619, 17-1469, 18-444, 18-461, 18-1283, 18-1548.

Plaintiff also brought his grievance across the street.  On December 30, 2016, he filed suit pro se in D.C. Superior Court against Dettling and FELSC, centrally alleging legal malpractice in their representation in connection with his employment dispute.  See Sup. Ct. Dkt. 2016-CA-

9316-B.  What happened there plays a central role here.  On February 1, 2017, Dettling moved to dismiss that matter, contending that Hall's complaint failed to state a legally viable claim against her.  A little over two weeks later, an attorney entered an appearance on behalf of Hall and filed a motion for default judgment, which the court denied.  Neither Hall nor his attorney filed any opposition to Dettling's motion to dismiss.  On March 20, 2017, Superior Court Judge Jennifer Di Toro granted her motion and dismissed the case.  See Sup. Ct. 03/20/2017 Dkt. Entry (Sup. Ct. Op.) (attached to this Opinion as Appendix A).  Although the Superior Court noted the lack of any opposition, it nevertheless addressed the motion on its merits, rather than treating it as conceded.  Id. at 1, 5.  Two days after the Superior Court ruled, Hall filed an opposition to Dettling's motion.  He later filed a motion to reconsider.  Judge Di Toro considered his motion but held fast to her prior ruling.  See Sup. Ct. 09/19/2017 Dkt. Entry.  Hall did not appeal.

Plaintiff now returns to this Court.  The players and the protests look familiar.  On February 27, 2018, Hall filed his Complaint against Dettling and DHS, signed by the same attorney who had represented him in Superior Court.  See ECF No. 1.  In May of this year, that attorney withdrew and Hall continued pro se.  See ECF No. 5.  After several additional filings, Hall submitted the operative Complaint on July 24, 2018.  In this Amended Complaint, he again takes aim at Dettling's representation.  Although his precise allegations are no beacon of clarity, the Court has done its best to discern the causes of action that Hall seeks to assert against Dettling.  A generous reading yields claims for legal malpractice, fraud or misrepresentation, breach of contract, and intentional infliction of emotional distress.

Dettling now moves to dismiss under Rule 12(b)(6), arguing that the Superior Court decision bars Plaintiff's current suit from proceeding against her.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating Defendant's Motion to Dismiss, the Court "must treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  See Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

While claim preclusion may be brought as "an affirmative defense that is generally pleaded in a defendant's answer, [it] is also properly brought in a pre-answer Rule 12(b)(6) motion when all relevant facts are shown by the court's own records, of which the court takes notice."  Hemphill v. Kimberly-Clark Corp., 605 F. Supp. 2d 183, 186 (D.D.C. 2009) (internal quotation marks and citations omitted); see also Stanton v. D.C. Court of Appeals, 127 F.3d 72, 76–77 (D.C. Cir. 1997) (collecting cases allowing parties to assert res judicata on 12(b)(6) motion).  In addition, "[a] court may take judicial notice of public records from other

proceedings." <u>Hemphill</u>, 605 F. Supp. 2d at 186 (citing <u>Covad Comms. Co. v. Bell Atl. Corp.</u>, 407 F.3d 1220, 1222 (D.C. Cir. 2005)); <u>see also</u> <u>Does I through III v. District of Columbia</u>, 238 F. Supp. 2d 212, 216–17 (D.D.C. 2002).

## III.    Analysis

The Court first addresses the claim-preclusion argument central to Defendant's Motion, before turning to two additional issues: the one cause of action that falls outside that analysis and Defendant's request for sanctions.

### A.  Claim Preclusion

If one thing is clear from Hall's Amended Complaint, it is this: he does not believe that he was given a fair shake. He is upset about both the terms of his settlement with DHS and the process that led to his ultimate agreement. These are issues that Hall has the right to raise in court. But that entitlement is not without limitation. Once a court hears and decides a case, a litigant may not bring the same claims in another tribunal, hoping for a different result. This intuitive principle is given life by the doctrine of claim preclusion, which is a variety of *res judicata*. <u>See</u> <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008). It serves to shield parties from vexatious litigation and establishes the finality of judgments necessary to engender reliance. <u>See</u> <u>Does I through III</u>, 238 F. Supp. 2d at 217.

When faced with a defense of claim preclusion, the Court draws the applicable rule from the jurisdiction that handed down the initial determination. That is because, under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must grant a state-court judgment "the same respect that it would receive in the courts of the rendering state." <u>Matsushita Elec. Indus. Co. v. Epstein</u>, 516 U.S. 367, 373 (1996). The Court, therefore, looks to the law of the District of Columbia. <u>See</u> <u>Stanton</u>, 127 F.3d at 77 (holding that this rule applies to D.C. courts). Before

embarking on this task, one quick preliminary note: As courts have observed, no "material differences" are readily discernable between "the District of Columbia's law of *res judicata* and the federal common law of *res judicata*." Id. at 78 n.4 (quoting U.S. Indus., Inc. v. Blake Constr. Co., 765 F.2d 195, 204 n.20 (D.C. Cir. 1985)). When helpful, this Court thus may also turn to federal common law for guidance.

Under D.C. law, the application of claim preclusion rests on a three-part test. The Court must ask:

> (1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case.

Peterson v. Washington Teachers Union, 192 A.3d 572, 575 (D.C. 2018) (quoting Calomiris v. Calomiris, 3 A.3d 1186, 1190 (D.C. 2010)).

The application of this framework to the facts at hand yields a straightforward answer. The first and third prongs warrant particularly little discussion. Starting with the first, an action is adjudicated finally when a court decides it "on the merits." Carr v. Rose, 701 A.2d 1065, 1070 (D.C. 1997). A "ruling is a judgment on the merits," in turn, "if it is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." Polsby v. Thompson, 201 F. Supp. 2d 45, 48–49 (D.D.C. 2002) (internal quotation marks and citations omitted). There can be no question here that the Superior Court's decision qualifies. Judge Di Toro went through each of Hall's grievances and found on the merits that he had not established the elements necessary to state a viable claim. On the third prong, in this case, as in Superior Court, Hall and Dettling are adverse parties. No more is needed to satisfy that element.

The second prong — which is often the crux of the claim-preclusion analysis — requires the most ink, although the resolution is equally clear. The core inquiry here looks to whether the two cases are built on the same factual foundation. That is because, under D.C. law, claim preclusion "bars not only claims actually litigated in the first action but 'all issues arising out of the same cause of action' that could have been litigated." EDCare Mgmt., Inc. v. DeLisi, 50 A.3d 448, 451 (D.C. 2012) (quoting Faulkner v. Gov't Emps. Ins. Co., 618 A.2d 181, 183 (D.C. 1992)); see also NRDC v. EPA, 513 F.3d 257, 261 (D.C. Cir. 2008) (stating that claim preclusion prevents "litigation of matters that should have been raised in an earlier suit"). The test for whether a claim constitutes the same "cause of action" — thus removing it from the scope of viable subsequent litigation — asks if "there is a common nucleus of facts." EDCare Mgmt., 50 A.3d at 451 (citation omitted). Put another way, a "claim or cause of action, for purposes of claim preclusion, comprises all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Smith v. Greenway Apartments LP, 150 A.3d 1265, 1273 (D.C. 2016) (citation and internal quotation marks omitted). To determine whether this second prong is met, the Court thus looks primarily to the commonality of the factual underpinnings of the two actions, rather than the precise identity of the assertions of legal liability. See Alford v. Providence Hosp., 60 F. Supp. 3d 118, 125 (D.D.C. 2014) ("[C]laim preclusion bars subsequent complaints arising from the same set of facts, even if the complaints bring claims under different statutes, or different legal theories.").

In this case, the gravamen of Hall's grievances stems from his attorneys' conduct during the negotiation of his settlement with DHS. See Compl. at 4–7; Compl., Exh. O (Counts) at 1–3. This statement is equally true of his Superior Court action. There, like here, Plaintiff lodged

allegations of breach of contract, malpractice, misrepresentation, and other misconduct against his attorneys for their role in developing the agreement that he ultimately signed. See Sup. Ct. Op. at 1–3, 5–9. Although the precise concerns raised here may differ in some respects, what matters for the claim-preclusion analysis is that both complaints clearly arise out of the same "transaction or occurrence" — namely, Dettling's representation of Hall related to his termination and subsequent settlement. See Greenway Apartments LP, 150 A.3d at 1273 (internal quotation marks and citation omitted). The Court has perused Hall's Amended Complaint and, with one exception (more on this in the next section), has found no potentially viable allegation that falls outside of this realm. See Ashbourne v. Hansberry, 894 F.3d 298, 302 (D.C. Cir. 2018) (finding preclusion for suits arising from termination of federal employment). In fact, the Superior Court opinion separately addressed claims for legal malpractice, breach of contract, and fraud. The few sparse accusations that Plaintiff sprinkles in his Amended Complaint that hint at more recent conduct are untethered from the legal claims he conceivably articulates. Because Hall's Amended Complaint thus shares a common "nucleus of facts" with one already decided on the merits, his suit cannot proceed. See EDCare Mgmt., 50 A.3d at 451 (citation omitted).

Faced with this application of law, Plaintiff offers one primary responsive objection. He contends that the Superior Court action should not be given preclusive power because he did not submit an opposition to Dettling's motion to dismiss in that court. See Pl. Opp. at 10. For this omission, Hall faults Dettling and Judge Di Toro's clerks, whom he says failed to notify him of the motion. Id. What Hall seems to be getting at with this allegation is an argument that he did not have a fair opportunity to litigate in the prior case. See, e.g., Hurd v. District of Columbia, 864 F.3d 671, 679 (D.C. Cir. 2017) (finding claim not precluded when plaintiff could not have

raised relevant damages claim in earlier proceeding); Nat'l Harbor GP, LLC v. Gov't of D.C., 121 F. Supp. 3d 11, 20 (D.D.C. 2015) ("Claim preclusion requires that the litigants had a fair opportunity to litigate all the issues."). This contention proves incapable of saving his cause.

For one, it is not clear that being denied an opportunity to oppose a motion — if that is indeed a fair characterization of Hall's factual allegations — can deprive a resulting decision of preclusive power, in the way that an inability to raise a claim can. Cf. Hurd, 864 F.3d at 679. Unlike an action in which a plaintiff is barred in an earlier proceeding from seeking certain remedies, Hall squarely raised the same categories of issues in Superior Court that he now seeks to litigate here, and which the Superior Court addressed on the merits.

The Court need not, however, opine on the significance of this differentiating characteristic. Plaintiff's more-pressing problem is that the Superior Court docket (of which the Court takes judicial notice) clearly shows that he was not denied a fair opportunity to oppose Dettling's motion. Just over two weeks after Dettling filed, Hall's attorney entered an appearance. See Sup. Ct. 02/19/2017 Dkt. Entry (Notice). He promptly filed a motion of his own, seeking default judgment. See Sup. Ct. 02/19/2017 Dkt. Entry (Motion). It is not a stretch to conclude that any good-faith motion for default judgment — the basis of which is the counterparty's lack of response to a complaint — would require the attorney to review the court's docket, which would have quickly turned up Dettling's motion. A full month nonetheless passed without any opposition from Hall or his attorney. In that time, the court denied Hall's motion for default judgment, see Sup. Ct. 03/10/2017 Dkt. Entry, but still did not rule on the motion to dismiss. Finally, on March 20, 2017 — approximately seven weeks after Dettling filed her motion, four weeks after Hall's attorney entered an appearance, and ten days after the Superior Court denied the motion for default judgment — the Superior Court dismissed the case

on the merits.  After the decision, Hall (or, more precisely, his attorney) did file a motion for

reconsideration, which the Superior Court considered and denied.  See Sup. Ct. 09/19/2017 Dkt.

Entry.  If Plaintiff still believed at this point that his case had been improperly dismissed, his

recourse was with the D.C. Court of Appeals.  Hall, however, did not appeal.  Given this course

of events, the conclusion that Plaintiff had a fair opportunity to litigate the relevant issues in

Superior Court seems inescapable.

     B.  Intentional Infliction of Emotional Distress

Although this conclusion completes the claim-preclusion discussion, there remains one

wrinkle, as the Court hinted earlier.  Hall asserts that Dettling's attempt to collect $30,269 in

legal fees from him "exacerbated Plaintiff's medical conditions and mental health issues."

Compl. at 6.  A careful reading of the record reveals that a fee arbitrator awarded Dettling this

sum in November of 2017, after the Superior Court action concluded.  This allegation thus falls

outside the "nucleus of facts" of Hall's Superior Court action and must be addressed separately.

Plaintiff does not expressly set forth the cause of action he seeks to assert.  The Court

nevertheless will read his Amended Complaint charitably, given Hall's *pro se* status.  The best fit

for his grievance seems to be intentional infliction of emotional distress.  To state a viable claim

under this tort, a plaintiff must allege conduct that is "so outrageous in character, and so extreme

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized society."  Nagy v. Corrections Corp. of Am., 79 F. Supp. 3d 114,

120 (D.D.C. 2015) (quoting Joyner v. Sibley Mem'l Hosp., 826 A.2d 362, 373 (D.C. 2003)).

Hall's assertion that Dettling attempted to collect a debt owed to her, even if she "threaten[ed]

him with a lien on his home and garnishment order for future earnings," does not even enter the

ballpark.  See Compl. at 6.  No part of Hall's Amended Complaint can therefore survive Dettling's Motion.

C.  Sanctions

There is one final issue that the Court must address.  In her Reply, Dettling requested that the Court sanction Hall.  See ECF No. 30 (Def. Reply).  Although *pro se* parties are generally held to a more lenient standard than their barred counterparts, sanctions can still be imposed. See Stankevich v. Kaplan, 156 F. Supp. 3d 86, 97–98 (D.D.C. 2016).  Federal Rule of Civil Procedure 11(b) requires that filings made by both "an attorney" and an "unrepresented party" be non-frivolous and made for a proper purpose.  Given Hall's repeated filings — which at times contain disparaging language — the Court is sympathetic to Dettling's request and her continual efforts to defend herself from suit.  Defendant has also pointed the Court to an email from Hall to Dettling that, to say the least, is not becoming of someone engaged in legal practice, whether or not *pro se*.  See Def. Reply, Exh. C.  That said, the Court exercises its discretion not to impose any sanctions at this time.  It cautions Plaintiff, however, that the Court may consider a pre-filing injunction should he continue to sue Dettling for issues arising out of her legal representation.

IV.  **Conclusion**

For these reasons, the Court will grant Defendant's Motion to Dismiss and deny Defendant's Motion for Sanctions.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 8, 2018

# APPENDIX A

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| STEVEN H. HALL,<br><br>                **Plaintiff,**<br><br>v.<br><br>ROSEMARY DETTLING, a/k/a<br>FEDERAL EMPLOYEE LEGAL<br>SERVICES CENTER,<br><br>                **Defendant.** | **2016 CA 009316 B**<br>**Judge Jennifer A. Di Toro** |

## ORDER

Before the Court is Defendant Rosemary Dettling's *Motion to Dismiss or in the Alternative, Motion for Summary Judgment* filed February 2, 2017.[1] No opposition has been filed. For the reasons discussed herein, Defendant's motion shall be granted.

### FINDINGS OF FACT

Defendant is an employment attorney who represents federal employees in federal sector employment matters. MTD at 9. Plaintiff was employed at the Department of Homeland Security ("DHS") from August 2, 2010 until November 18, 2013. Compl. ¶ 2. Plaintiff was employed by the U.S. Navy from October 5, 2015 to October 31, 2016. *Id.* On July 17, 2013, Plaintiff hired Defendant to represent him before the Equal Employment Opportunity Commission "regarding false allegations of sexual harassment and retaliation in a hostile work environment." *Id.* On July 17, 2013, Plaintiff paid Defendant $3500, the first of three flat-rate payments under their retainer agreement. *Id.* at Ex. A. On November 15, 2013, DHS removed Plaintiff from his position of "Administrative Specialist, GS-301-12, with the Office of the Chief Readiness Support Officer ("CRSO"), Department of Homeland Security, and Federal Service." *Id.* On December 4, 2013,

---

[1] The docket reflects that service upon the Defendant has not been effected in accordance with Super. Ct. Civ. R. 4(e). However, the Defendant does not contest service in the Motion to Dismiss.

Plaintiff signed a second retainer agreement with Defendant, to secure her representation of him in the appeal of his termination to the Merit Systems Protection Board ("MSPB"). Compl. ¶ 3, Ex. B. On March 19, 2014, Plaintiff signed a third retainer agreement with Defendant for representation in two additional cases. *Id.*, Ex. B.

In November 2015, the parties agreed on settlement terms and drafted a settlement agreement resolving the outstanding claims. *Id.* Plaintiff signed the settlement agreement on November 23, 2015. *Id.*, Ex. H. Under the terms of the agreement, DHS agreed to give Defendant partial attorney's fees in the amount of $30,000 and an additional $55,000 if he dismissed his outstanding EEOC and MSPB cases. *Id.* The day following, however, Plaintiff decided to revoke the agreement pursuant to the 7-day revocation clause. *Id.*, Ex. G, H. Accordingly, Ms. Joanne Dekker, a contract attorney employed by Defendant, informed DHS that Plaintiff wished to revoke the agreement. *Id.* Plaintiff then informed Defendant that he wanted to terminate her representation and informed an attorney for DHS, Ms. Byers, that he had done so. *Id.*, Ex. G.

On December 1, 2015, Ms. Byers emailed Defendant to inform her that her "former client, Steven Hall, rescinded his request to revoke the November 23, 2015 settlement agreement." MTD at 15, ¶ 21. In his rescission notice to the Administrative Judge, Plaintiff specifically indicated that he wished to go forward with the settlement agreement. As a result, the Administrative Judge dismissed his appeal as settled. *Id.* at 16, ¶ 21, Attachment D.  MSPB Judge Hudson issued his Initial Decision on December 1, 2015, dismissing Plaintiff's appeal as voluntarily settled. *Id.* at 17, ¶ 22, *citing Hall v. Department of Homeland Security*, MSPB Docket No. DC-0752-14-0243-I-1 (December 1, 2015). On January 2, 2016, Plaintiff filed a Petition for Review with the MSPB, alleging that "DHS attorneys and my former private

attorney violated several Rules of Professional Conduct, Ethics Opinion 363, and Federal Rules of Evidence." Compl. Ex. G.  On January 16, 2016, Defendant sent Plaintiff two invoices, one in the amount of $27,043.00 for work performed on the EEOC cases, and another for $23,225.80 for work performed on the MSPB cases. MTD at 17, ¶¶ 24-25. The MSPB denied Plaintiff's Petition for Review on June 23, 2017, finding that "by the terms of the settlement agreement, the appellant knowingly and voluntarily signed the settlement agreement, waived further appeal rights concerning the issues raised in this appeal, and the waiver is enforceable." *Id*. at 18, ¶ 26, Ex. G (*Hall v. Department of Homeland Security*, DC-0752-14-0243-I-1 (June 23, 2016)).

In July 2016, Plaintiff filed suit against Defendant, the Federal Employee Legal Services Center, Ms. Dekker and DHS in District Court for the District of Columbia. *Id*., *see Hall v. Dep't of Homeland Security*, 2016 WL 7017256 (December 1, 2016). There, Plaintiff alleged that Plaintiff and the other named defendants "conspired and coerced Plaintiff into signing the settlement agreement." *Id*.  Plaintiff voluntarily dismissed his claim on August 25, 2016; appeal rights have expired. *Id*. at Attachment E.  On November 29, 2016, Plaintiff filed a complaint against Defendant with the District of Columbia Bar's Office of Disciplinary Counsel, alleging that her "professional misconduct … resulted in my District Court case being dismissed." *Id*. at 18, Compl., Ex. I. On December 1, 2016, Judge James Boasberg of the U.S. District Court for the District of Columbia issued an "Order Granting Sanctions" which included, *inter alia*, the finding that Plaintiff "eventually decided to proceed with the settlement after he had terminated Dettling's representation." MTD at 19 ¶ 30.

## Conclusions of Law

Defendant argues that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted as required by Super. Ct. Civ. R. 12(b)(6). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543-44 (D.C. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court must construe the complaint in the light most favorable to the Plaintiff and must take the facts alleged in the complaint as true. *Casco Marina Dev. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 81 (D.C. 2003). These factual allegations in the complaint, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A motion to dismiss pursuant to Rule 12 (b)(6) may rely upon documents that are in the public record or are referred to in the complaint. *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1025 (D.C. 2007) ("Documents that a defendant attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to her claim."); *see also Buaiz v. United States*, 471 F. Supp. 2d 129, 134 (D.D.C. 2007) (citing *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)) (in addition to relying on the allegations in the Complaint, the Court may rely upon "'documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.'"). For example, documents attached to the motion to dismiss such as opinions, orders, briefs, transcripts, and arbitrator's findings can properly be considered under a motion to dismiss. *See Smith v. Public Def. Serv.*, 686 A.2d 210, 212 (D.C. 1996); *Walker v. FedEx Office & Print Servs.*, 123 A.3d 160, 164 (D.C. 2015) (citing

*Missouri Bank & Trust Co. v. Gas-Mart Dev't Co.*, 35 Kan. App. 2d 291, 130 P.3d 128, 132 (Kan. Ct. App. 2006)).

However, if a court refers to materials outside the pleadings in resolving a 12(b)(6) motion, it must convert the motion to dismiss into one for summary judgment. *See Grimes v. District of Columbia, Bus. Decisions Info. Inc.*, 89 A.3d 107, 111 (D.C. 2014); *see also* Super. Ct. Civ. R. 12(b) (if the defendant moves for failure to dismiss under 12(b)(6), and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.") When the court converts a motion to dismiss into a motion for summary judgment, the parties must be provided with the opportunity to present evidence in support of their positions. *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011). Defendant has attached several documents to her Motion to Dismiss. More specifically, Defendant has attached MSPB Judge Hudson's Initial Decision, Judge Boasberg's Order of December 1, 2016, and Plaintiff's notice of appeal of the voluntary dismissal of his federal complaint. These documents are not attached nor incorporated by reference in the Complaint and are relevant to this Court's resolution of Plaintiff's claims and Defendant's motion. However, judicial orders qualify as addenda which may properly be considered in resolving a motion to dismiss. *See* Super. Ct. Civ. R. 12(b). The Court will therefore consider Defendant's Motion to Dismiss on the merits.

## I. Lack of Competent Representation

In order to state a claim of professional negligence, a plaintiff must allege 1) the attorney's employment, 2) neglect of a reasonable duty, 3) that such negligence resulted in and was the proximate cause of injury to the client. *In re Estate of Curseen*, 890 A.2d 191, 193 (D.C. 2006). Plaintiff primarily alleges that Defendant "engaged in malpractice for forwarding a

known fraudulent settlement agreement/contract," failing "to adequately represent Plaintiff by not focusing more attention on retaliation, false allegation of sexual allegation of sexual harassment in an HWE, nor required of DHS to provide a copy or allow Plaintiff to listen to an alleged sexual-laced phone message," and failing to "represent Plaintiff when DHS committed disability discrimination and denied [reasonable accommodation]." Compl. at ¶¶ 3 – 4. While it is undisputed that Plaintiff and Defendant had a contractual agreement, the complaint includes no specific facts in support of the allegations of malpractice or misconduct. With regard to the allegation that the settlement agreement forwarded to DHS was fraudulent, the record shows that Plaintiff elected to move forward with the agreement after he terminated Defendant's representation. Even construing all allegations in favor of the non-moving party, the Court cannot conclude that Defendant could be found liable for actions taken by Plaintiff *pro se*. Plaintiff's signature appears on the settlement agreement; the two MSPB decisions both indicate that he settled his case after he fired Defendant, who therefore cannot be held liable for any harm flowing from the settlement agreement itself. As such, the Complaint fails to meet the requirement that a complaint must set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist. *Williams v. District of Columbia*, 9 A.3d 484, 488 (D.C. 2010) (citation and quotation omitted). Finally, although Plaintiff makes numerous assertions in support of his negligence claim, he does not identify any nexus between actions allegedly taken by Defendant and loss allegedly suffered by Plaintiff. Plaintiff's claim for lack of competent representation shall be dismissed for failure to plead the factual background to assert a claim upon which relief may be granted.

## II. Fraud and Misrepresentation

It is well-established that allegations of fraud must be pled with particularity. Super. Ct. Civ. R. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."); *see also Virginia Academy of Clinical Psychologists v. Grp. Hospitalization and Medical Servs.*, 878 A.2d 1226, 1233 (D.C. 2005) ("Fraud is never presumed and must be particularly pleaded."). The essential elements of common law fraud are 1) a false representation, 2) in reference to material fact, 3) made with knowledge of its falsity, 4) with intent to deceive, and 5) action is taken in reliance on the representation. *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013) (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1074 n.22 (D.C. 2008)) (further citations omitted). A cause of action for fraud "must allege such facts as will reveal the existence of all the requisite elements of fraud." *Atraqchi v. GUMC Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977)). "Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient." *Id.*

Here, Plaintiff alleges that Defendant forwarded a "known fraudulent settlement agreement" to DHS. Compl. ¶ 1. However, the Complaint concedes that Plaintiff signed the settlement agreement, terminated Defendant's representation, and then approved the settlement *pro se* by sending it to DHS. Plaintiff's fraud allegation includes no factual allegations that Defendant had any intent to deceive or manipulate Plaintiff, nor the date of the alleged fraud, its location, the content of the alleged misrepresentation, the misrepresented facts, or any detrimental reliance. Moreover, Plaintiff's decision to settle the case via the signed agreement breaks any causal connection between alleged acts of Defendant during the course of the

representation and Plaintiff's own decision to settle the case after Defendant had ceased to represent him. The claim must therefore be dismissed.

### III.    Breach of Contract

In order to set forth a claim for breach of contract, the plaintiff must allege that there existed: 1) a valid contract between the parties, 2) an obligation or duty arising out of the contract, 3) a breach of that duty, and 4) damages caused by breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Plaintiff principally alleges that Defendant breached their contract by seeking payment at the prevailing market rate after he terminated her representation. The signed retainer agreements establish that a valid contract existed between the parties. Compl. Ex. A, B. Included in the retainer agreements is language that Plaintiff agreed, in the event of termination of the representation, to pay Defendant "full attorney's fees at [the] Laffey matrix rate." *Id*. The invoices attached to the Complaint show that pursuant to the agreement, once the representation was terminated, Defendant sent Plaintiff two invoices calculated at the Laffey rate, deducting prior payments of $7,000 from the EEOC cases and $8500 from the MSPB invoice. *Id*., Ex. A, B, G. Plaintiff has not alleged any facts in support of the claim that Defendant breached any duty, nor alleged that damages resulted from the alleged breach. Therefore, the claim shall be dismissed.

### IV.    Obstruction of Justice, Prohibited Practices, Violations of the Rules of Professional Conduct

Plaintiff alleges that Defendant engaged in obstruction of justice. Compl. at 1. Under D.C. Code § 22-722 (a) (2), a person commits the offense of obstruction of justice if that person:

> Knowingly uses intimidating or physical force, threatens or corruptly persuades another person, or by threatening letter or communication, endeavors to influence, intimidate, or impede a witness or officer in any official proceeding, with intent to:

A) Influence, delay, or prevent the truthful testimony of the person in an official proceeding;
B) Cause or induce the person to withhold truthful testimony or a record, document, or other object from an official proceeding;
C) Evade a legal process that summons the person to appear as a witness or produce a document in an official proceeding; or
D) Cause or induce the person to be absent from a legal official proceeding to which the person has been summoned by legal process.

*See* D.C. Code § 22-722(a)(6). Plaintiff does not allege any facts that would support a claim that Defendant attempted to or actually did act with the intent to undermine the integrity of any proceeding or investigation. Apart from settling his claims, no other proceeding took place within the timeframe noted in the Complaint. The record does show that there is a complaint pending against Defendant with the D.C. Bar Association, but there are no factual allegations that Defendant has acted in any way that would permit this Court to find that a claim of obstruction of justice was stated with sufficient particularity to survive a motion to dismiss.

Accordingly, it is this 20th day of March, 2017, hereby

**ORDERED** that Defendant's *Motion to Dismiss Complaint* is hereby **GRANTED** and the case closed.

**SO ORDERED.**

**Jennifer A. Di Toro**
**Associate Judge**
*Signed in Chambers*

Copies to:

Glenn Stephens, Esq.
E-served via Casefil*express*
*Counsel for Plaintiff*

Rosemary Dettling, Esq.
E-served via Casefil*express*
*Pro Se Defendant*

9