UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN H. HALL,<br><br>    Plaintiff,<br><br>    v.<br><br>KIRSTJEN M. NIELSEN, in her capacity as Secretary, Department of Homeland Security,<br><br>    Defendant. | Civil Action Nos. 18-461, 18-1548 (JEB) |

## MEMORANDUM OPINION

Plaintiff Steven H. Hall used to work for Defendant Department of Homeland Security. After DHS terminated his employment, he sought administrative relief for a variety of forms of alleged discrimination. Before the case ever reached court, the parties entered into a settlement awarding Hall $55,000. But, at least from Hall's perspective, the battle was only beginning. He subsequently filed a flurry of *pro se* lawsuits in various courts seeking damages against the agency and an attorney who represented him during the settlement process, Rosemary Dettling. These consolidated actions are the latest of those suits. The Court previously dismissed the claims against Dettling, and it now does the same for DHS.

I.    Background

The Court has related the facts underlying Hall's lawsuits in several previous Opinions. See, e.g., Hall v. Nielsen, No. 18-461, 2018 WL 5840663 (D.D.C. Nov. 8, 2018); Hall v. Dep't of Homeland Security, 219 F. Supp. 3d 112 (D.D.C. 2016). Only a brief summary is needed to catch readers up on the terrain. The Court first discusses Hall's employment with DHS before delving into the procedural history underlying his years-long traipse through different

1

administrative and judicial fora. It closes with a brief elucidation of the claims he brings in this case.

This story starts in 2012, when Plaintiff was working for DHS at its construction site on the former grounds of St. Elizabeth's. See ECF No. 12 (Second Amended Compl.) at ECF p. 58. (Docket citations that do not contain any case number refer to filings in the lead case, No. 18-461.) That year, he requested an accommodation for several respiratory illnesses that were exacerbated by dusty conditions at his workplace. Id. Over the next several years, Hall alleges, DHS sometimes accommodated his illnesses but other times did not. Id. at ECF pp. 58–60. It also provided him with workers' compensation for some periods during which he was ill but not for others. Id. Around the same time, Hall's supervisors disciplined him for misconduct and taking leave without authorization — charges that Hall denied. Id. DHS eventually terminated Hall's employment for misconduct on November 18, 2013. Id. at ECF p. 62.

Plaintiff challenged his termination and his treatment in the lead-up to his firing before the Merit Systems Protection Board, retaining Rosemary Dettling to help with the case. Id. He subsequently agreed to a settlement that awarded him $55,000 in exchange for withdrawing his claims against the agency. See ECF No. 38 (MTD), Exh. 1 (Settlement Agreement) at 3. Hall later sought to overturn the settlement before the MSPB, arguing that it was invalid and that he had revoked his prior acceptance. See Hall v. Dep't of Homeland Security, 2016 WL 3438497, ¶ 1 (M.S.P.B. June 23, 2016). The MSPB rejected his arguments, concluding that "he knowingly and voluntarily signed the settlement agreement." Id., ¶ 10.

Hall next turned to the courts. He first filed a lawsuit against DHS in this Court. See Hall v. Dep't of Homeland Security, No. 16-1471. Several months later, he voluntarily dismissed the government defendants from that action, choosing to pursue only his claims against his

2

previous attorney Dettling.  Id., Minute Order of August 18, 2016.  The Court then dismissed the case for lack of jurisdiction.  Id., ECF No. 10, aff'd sub nom. Hall v. Dettling, 2017 WL 2348158 (D.C. Cir. May 17, 2017).  Hall next challenged the MSPB's decision in the Federal Circuit, which dismissed the case because it did not have jurisdiction over his claims and because the appeal was untimely.  See MTD, Exh. 3 (Federal Circuit Decision) at 2.  His current lawsuit, which the Court discusses in more depth below, "does not seek judicial review of [that] MSPB decision."  Second Amended Compl. at ECF p. 1.  The MSPB decision upholding the settlement thus remains the final word on that issue.

One could be forgiven for thinking that would be the end of the story.  Plaintiff, in fact, was just getting started.  In 2018, he filed four additional lawsuits against his former employer in this Court.  See Civil Action Nos. 18-444, 18-461, 18-1283, 18-1548.  As two of those suits raised similar claims against many of the same parties, they were consolidated here.  See Nos. 18-461 & 18-1548, Minute Orders of October 3, 2018.

In each, Plaintiff asserts more than twenty counts and seeks more than a dozen different remedies.  His claims against the Government, as best the Court can discern, fall into roughly three categories.  The first set relates directly to his employment with DHS.  In that regard, he alleges that Defendant discriminated against him on the basis of age and disability and that it improperly failed to pay him workers' compensation.  See Second Amended Compl. at ECF pp. 67–69 (Counts I–XV, XVIII–XX, XXII); No. 18-1548, ECF No. 7 (Amended Compl.) at ECF pp. 19–21 (Counts I-XV, XVIII–XIX, XXI).  He seeks an order requiring the agency to engage in an interactive process with him to accommodate his disability, to expunge all negative items from his personnel file, and to award him more than $800,000 in compensatory and punitive

previous attorney Dettling.  Id., Minute Order of August 18, 2016.  The Court then dismissed the case for lack of jurisdiction.  Id., ECF No. 10, aff'd sub nom. Hall v. Dettling, 2017 WL 2348158 (D.C. Cir. May 17, 2017).  Hall next challenged the MSPB's decision in the Federal Circuit, which dismissed the case because it did not have jurisdiction over his claims and because the appeal was untimely.  See MTD, Exh. 3 (Federal Circuit Decision) at 2.  His current lawsuit, which the Court discusses in more depth below, "does not seek judicial review of [that] MSPB decision."  Second Amended Compl. at ECF p. 1.  The MSPB decision upholding the settlement thus remains the final word on that issue.

One could be forgiven for thinking that would be the end of the story.  Plaintiff, in fact, was just getting started.  In 2018, he filed four additional lawsuits against his former employer in this Court.  See Civil Action Nos. 18-444, 18-461, 18-1283, 18-1548.  As two of those suits raised similar claims against many of the same parties, they were consolidated here.  See Nos. 18-461 & 18-1548, Minute Orders of October 3, 2018.

In each, Plaintiff asserts more than twenty counts and seeks more than a dozen different remedies.  His claims against the Government, as best the Court can discern, fall into roughly three categories.  The first set relates directly to his employment with DHS.  In that regard, he alleges that Defendant discriminated against him on the basis of age and disability and that it improperly failed to pay him workers' compensation.  See Second Amended Compl. at ECF pp. 67–69 (Counts I–XV, XVIII–XX, XXII); No. 18-1548, ECF No. 7 (Amended Compl.) at ECF pp. 19–21 (Counts I-XV, XVIII–XIX, XXI).  He seeks an order requiring the agency to engage in an interactive process with him to accommodate his disability, to expunge all negative items from his personnel file, and to award him more than $800,000 in compensatory and punitive

previous attorney Dettling.  Id., Minute Order of August 18, 2016.  The Court then dismissed the case for lack of jurisdiction.  Id., ECF No. 10, aff'd sub nom. Hall v. Dettling, 2017 WL 2348158 (D.C. Cir. May 17, 2017).  Hall next challenged the MSPB's decision in the Federal Circuit, which dismissed the case because it did not have jurisdiction over his claims and because the appeal was untimely.  See MTD, Exh. 3 (Federal Circuit Decision) at 2.  His current lawsuit, which the Court discusses in more depth below, "does not seek judicial review of [that] MSPB decision."  Second Amended Compl. at ECF p. 1.  The MSPB decision upholding the settlement thus remains the final word on that issue.

One could be forgiven for thinking that would be the end of the story.  Plaintiff, in fact, was just getting started.  In 2018, he filed four additional lawsuits against his former employer in this Court.  See Civil Action Nos. 18-444, 18-461, 18-1283, 18-1548.  As two of those suits raised similar claims against many of the same parties, they were consolidated here.  See Nos. 18-461 & 18-1548, Minute Orders of October 3, 2018.

In each, Plaintiff asserts more than twenty counts and seeks more than a dozen different remedies.  His claims against the Government, as best the Court can discern, fall into roughly three categories.  The first set relates directly to his employment with DHS.  In that regard, he alleges that Defendant discriminated against him on the basis of age and disability and that it improperly failed to pay him workers' compensation.  See Second Amended Compl. at ECF pp. 67–69 (Counts I–XV, XVIII–XX, XXII); No. 18-1548, ECF No. 7 (Amended Compl.) at ECF pp. 19–21 (Counts I-XV, XVIII–XIX, XXI).  He seeks an order requiring the agency to engage in an interactive process with him to accommodate his disability, to expunge all negative items from his personnel file, and to award him more than $800,000 in compensatory and punitive

damages. See Second Amended Compl. at ECF p. 71; No. 18-1548, Amended Compl. at ECF p. 23.

The second category relates to the settlement agreement. Here, he claims that the settlement should be voided because it was the result of misrepresentation, duress, and collusion. See Second Amended Compl. at ECF pp. 68–69 (Counts I, XV–XVII, XXI, XXVI); No. 18-1548, Amended Compl. at ECF pp. 21–22 (Counts I, XV–XVII, XX, XXV–XXVI). He seeks an order from the Court finding the settlement "void as unconscionable and signed under duress." Second Amended Compl. at ECF p. 71; No. 18-1548, Amended Compl. at ECF p. 23.

Hall's third and final set of claims is his least intelligible but appears to relate to the Government's conduct during prior federal-court litigation. He specifically alleges that Defendant retaliated against him by failing to file an Answer, refusing to admit subject-matter jurisdiction, and preventing him from gaining discovery and a trial on the merits. See Second Amended Compl. at ECF pp. 69–70 (Counts XXIII–XXV); No. 18-1548, Amended Compl. at ECF p. 22 (Counts XXII–XXIV).

Dettling, who was named as a Defendant only in No. 18-461, previously filed a motion to dismiss the claims against her on *res judicata* grounds, which the Court granted. See Hall, 2018 WL 5840663, at *3–5. The Government has filed its own Motion to Dismiss everything else, which is now ripe for the Court's consideration.

## II. Legal Standard

Defendant seeks dismissal of this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior,

4

231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

Federal Rule of Civil Procedure 12(b)(6), conversely, provides for the dismissal of an action when a complaint fails to "state a claim upon which relief can be granted." Although the notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and there must be "more than a sheer possibility that a defendant has acted unlawfully." Id.

## III.     Analysis

The Court first addresses whether it has jurisdiction over this case in light of the Tucker Act, which directs certain suits against the United States to the Court of Federal Claims. Finding

5

jurisdiction present, it then moves on to the particulars of Plaintiff's claims, addressing, respectively, his counts arising from his employment with DHS and those based on the Government's more recent conduct in federal-court litigation.

　　A.　Jurisdiction and The Tucker Act

The Government argues that the provisions of the Tucker Act mean that only the Court of Federal Claims has jurisdiction over this suit. See ECF No. 45 (Def. Reply) at 2–3. "[A]n action must be brought under the Tucker Act in the Court of Federal Claims," rather than in federal district court, if it: (1) "seeks more than $10,000 in monetary relief from the federal Government"; (2) "is essentially a contract action"; and (3) "the Court of Federal Claims would have jurisdiction over the matter." Yee v. Jewell, 228 F. Supp. 3d 48, 56 (D.D.C. 2017) (internal quotation marks and citations omitted). The question, accordingly, is whether Hall's Complaints seek more than $10,000 from the Government in a contract action that the Court of Federal Claims would be able to hear. Looking to the substance, rather than the form, of the Complaints, see Kidwell v. Dep't of Army, 56 F.3d 279, 284 (D.C. Cir. 1995), the Court finds that they do not. The reason, in short, is that Plaintiff's case is not "essentially a contract action."

In Megapulse, Inc. v. Lewis, 672 F.2d 959 (D.C. Cir. 1982), the Court of Appeals explained that the question of whether a case is a "contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." Id. at 968. The D.C. Circuit there found that the plaintiff's case was not such an action because it did not claim "breach of contract," sought "no monetary damages against the United States" arising from any contract, and did not seek "specific performance." Id. at 969. Indeed, the Court explained, the plaintiff's claims were based on independent legal grounds, while the Government sought to raise the contract as a defense. Id. Under such circumstances,

6

"the mere fact that a court may have to rule on a contract issue does not" transform a non-contract action in a contract one. Id. at 968.

This reasoning in Megapulse applies with equal force here. While Plaintiff's Complaints raise various contract issues, including that the settlement in this case was procured by fraud, collusion, and duress, see Second Amended Compl. at ECF p. 69, they do not seek independent relief on those claims; the only relief sought is a finding that the settlement is "void." See Second Amended Compl. at ECF p. 71; No. 18-1548, Amended Compl. at ECF p. 23. Considered in the context of his Complaints, that request makes sense, for Hall is not seeking to vindicate his rights under the settlement. Just the opposite. He wishes to bring statutory claims in district court, and, expecting the Government to raise the settlement as a defense, he requests an order holding it void. Such circumstances mirror those presented in Megapulse. While the Court here may need to pass on certain questions about a contract, as in that case, it would do so in the context of the Government's defense of the action, not Plaintiff's independent requests for relief. And, like the plaintiff's claims in Megapulse, Hall's core claims — *viz.*, those arising under the Rehabilitation Act, the Age Discrimination in Employment Act, and potentially Title VII — are not contractual in nature. See Greenhill v. Spellings, 482 F.3d 569, 574 (D.C. Cir. 2007). This case thus does not belong in the Court of Federal Claims. See Yee, 228 F. Supp. 3d at 56 (explaining that claims that do not "turn[] entirely on the terms of a contract" are not within Tucker Act) (quoting Albrecht v. Comm. on Employee Benefits, 357 F.3d 62, 69 (D.C. Cir. 2004)); see also Moore v. Dep't of Justice, 935 F. Supp. 2d 30, 33–34 (D.D.C. 2013) (explaining that claims for breach of settlement agreement in which plaintiff sought backpay not within Tucker Act); Allen v. Napolitano, 774 F. Supp. 2d 186, 196 (D.D.C. 2011) (explaining that court "can exercise jurisdiction over Title VII claims relating to a settlement agreement if the essence

7

of the claims requires interpreting Title VII, not a contract"); cf. Hansson v. Norton, 411 F.3d 231, 261 (D.C. Cir. 2005) (explaining that case did fall within Tucker Act because it did not "require[] an interpretation of Title VII with respect to [plaintiff's] discrimination complaint").

    B.  Employment Claims

With jurisdiction out of the way, the Court turns to the merits of Plaintiff's central claims against DHS — namely, his allegations that it did not properly accommodate his disabilities, did not pay him the workers' compensation he was owed, and discriminated against him on the basis of age and disability. See Second Amended Compl. at ECF pp. 67–69; No. 18-1548, Amended Compl. at ECF pp. 19–21. The Government asks the Court to dismiss those claims because they are barred by the settlement agreement that Hall signed and that the MSPB upheld. See MTD at 2. Hall rejoins that the settlement was the result of "misrepresentation" and "coercion" and is "invalid, fraudulent, and ambiguous." See ECF No. 43 (Opp.) at 2–3. The Court begins with the question of whether the settlement, if upheld, covers Plaintiff's current claims before addressing the legal validity of the agreement.

With one exception, the settlement agreement unquestionably encompasses Hall's employment-related claims. By its terms, that document "resolv[es] all claims, issues, and causes of action raised or which could have been raised between [Hall] and [DHS] up to the date of th[e] Agreement." Settlement Agreement at 1. As the settlement is dated November 23, 2015, and Plaintiff's employment-related claims all arose before then, they are barred by the settlement. In case there were any doubt, the agreement goes into more depth about the claims that are covered, listing several MSPB appeals, Equal Employment Opportunity complaints, and Federal Tort Claims Act claims that Hall agreed to "withdraw, release, or waive, with prejudice." Id. at 2. The listed administrative proceedings addressed the same claims Hall brings here,

including those for discrimination and reasonable accommodation. See MTD at 8–13. And, even if Hall now advances claims not specifically listed, they would still be barred by the settlement. See Settlement Agreement at 2 (Appellant agrees "[t]o withdraw . . . all formal and informal EEO claims . . . as of the date of the signing of this Agreement, including, but not limited to [list of claims.]") (emphasis added).

The exception is Hall's workers' compensation claim, which was explicitly left out of the settlement. Id. But this Court lacks jurisdiction over claims related to such compensation. See Lepre v. Dep't of Labor, 275 F.3d 59, 73–74 (D.C. Cir. 2001) (holding that judicial review over workers' compensation claims generally precluded). Indeed, this is not the first time a court in this district has said as much to this Plaintiff. See Hall v. Dep't of Labor, 289 F. Supp. 3d 93 (D.D.C. 2018) (concluding that Federal Employees' Compensation Act precluded review of Hall's claims).

As all of Hall's employment-related claims over which this Court has jurisdiction are covered by the settlement, in order to prevail here, he must somehow vitiate the agreement's force. In attempting to do so, Plaintiff principally contends that it was the product of duress and fraud and that it is unconscionable. See Opp. at 3–8. DHS maintains that Plaintiff cannot challenge the settlement's validity because it has already been upheld by the MSPB and because he seeks to retain the benefit of the settlement. See MTD at 6–7; Def. Reply at 3–4. Addressing each in turn, the Court agrees that the settlement bars review.

Defendant first submits that the doctrine of issue preclusion bars Hall from challenging the validity of the settlement in this case. The Court agrees. Under this doctrine, "an issue of fact or law that was actually litigated and necessarily decided is conclusive in a subsequent action between the same parties or their privies." Johnson v. Duncan, 746 F. Supp. 2d 163, 168

9

(D.D.C. 2010). Issue preclusion requires three elements: first, "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; second, "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and third, "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." Martin v. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)) (internal quotation marks omitted).

The MSPB's determination of the validity of the settlement satisfies each of these elements. As to the first, Hall sought to overturn the settlement before the MSPB on a host of grounds including "misrepresentation," "bias," "coercion," and improper behavior by his representatives. Those are substantially the same grounds on which he seeks to invalidate the settlement here. To the extent he raises any additional arguments about unconscionability or the illegality of certain contractual terms, those would be part of the same "issue" that was before the MSPB. See Yamaha Corp, 961 F.2d at 254 ("[O]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case."). With regard to the second element, the MSPB squarely rejected Hall's arguments and found that "he knowingly and voluntarily signed the settlement agreement" and that "the waiver is enforceable." Hall, 2016 WL 3438497, ¶ 10. Such determination was necessary to the Board's decision rejecting the appeal. On the third, preclusion works no unfairness to Hall. He had a full opportunity to litigate this issue before the MSPB and challenge its determination in court. Having lost there, he should not now receive another bite at the apple.

The Court adds that the MSPB's determination has preclusive effect even though it is not technically a "judicial" determination. As the Supreme Court has explained, "[W]hen an

10

administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." B&B Hardware, Inc. v. Hargis Indus., 135 S. Ct. 1293, 1303 (2015) (quoting Univ. of Tenn. v. Elliott, 478 U.S. 788, 797–98 (1986)); see also Morgan v. FAA, 657 F. Supp. 2d 146, 153 (D.D.C. 2009) (finding judgment of MSPB issue preclusive). Just so here. Of course, if a plaintiff seeks direct judicial review of an administrative judgment in accordance with a statutory scheme, that judgment will not be preclusive, just as a district court's judgment is not preclusive before the court of appeals. But Hall avowedly "does not seek judicial review of [the] MSPB decision." Opp. at 1. Nor could he, given that a request for review in this Court would be untimely. See 5 U.S.C. § 7703(b)(2) (providing that review must be sought within 30 days). He did seek review in the Federal Circuit, which was rejected for lack of jurisdiction and lack of timeliness. See Federal Circuit Decision. Hall thus seeks to attack the MSPB's final, valid conclusion in an entirely separate case. This he cannot do. The upshot is that the MSPB's judgment is preclusive.

Even if issue preclusion did not apply, Hall's argument that the settlement should be voided founders for another reason: He may not request an order voiding a contract while seeking to retain the contract's benefit. As the court explained in Schmidt v. Shah, 696 F. Supp. 2d 44 (D.D.C. 2010), "A party's power to avoid a contract due to fraud or duress is lost if, after the circumstances that made the contract voidable have ceased to exist, the party . . . 'acts with respect to anything that he has received in a manner inconsistent with disaffirmance.'" Id. at 63 (quoting Restatement (Second) of Contracts § 380 and applying D.C. law). Following that principle, the court rejected the plaintiff's arguments that his settlement should be voided on account of duress and misrepresentation because he sought to retain the monetary payout of that

11

settlement.  Id. at 63–64.  In this case, Hall insists that he "deserves to retain the monetary benefits of $55,000 received in July 2016."  Opp. at 1.  Just like the plaintiff in Schmidt, he cannot have it both ways.  As he seeks to retain the contract's benefit, Plaintiff is also bound by the provisions that bar him from bringing claims in court arising from his employment with DHS.

As discussed in the jurisdictional section, *supra* Section III.A, and because the validity of the settlement has been established, any stand-alone counts Plaintiff alleges relating to that contract — *e.g.*, misrepresentation, duress, and fraud, see Second Amended Compl. at ECF p. 71 — also fail.

C. Post-Employment Claims

All that remain are Plaintiff's claims that the Government has violated his rights in the years following the settlement, principally in federal-court litigation.  In that vein, he asserts that Defendant failed to engage with him regarding the settlement agreement, refused to file an Answer, refused to admit subject-matter jurisdiction, and prevented him from gaining discovery and a trial on the merits.  See Second Amended Compl. at ECF pp. 68–70.  None of those claims is actionable under the Rehabilitation Act, the Age Discrimination in Employment Act, or Title VII.  The agency's efforts to defend itself in litigation that post-dates Plaintiff's employment are not violations of federal enactments protecting employees from various forms of discrimination.  At bottom, Hall has not identified any source of law giving him a cause of action against the Government for the conduct he identifies as objectionable.  Such claims must, accordingly, be dismissed.  Plaintiff's Complaints also contain some vaguer allegations of government wrongdoing, which the Court has considered and determined do not state a plausible claim on which relief can be granted.

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order so stating will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 17, 2019