UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN H. HALL,<br><br>Plaintiff,<br><br>v.<br><br>KIRSTJEN M. NIELSEN, *et al.*,<br><br>Defendants. | Civil Action No. 18-461 (JEB) |

### MEMORANDUM OPINION

Plaintiff Steven Hall has filed a barrage of *pro se* suits related to his firing by the Department of Homeland Security and a subsequent settlement. Feeling he was treated unfairly during those proceedings — despite having obtained $55,000 — Hall has continued to sue both his former attorney Rosemary Dettling and various government officials, even as he has repeatedly lost in state and federal court. Although this Court dismissed Hall's latest case, he has recently filed several additional lawsuits against Dettling in D.C. Superior Court. Dettling now moves for an injunction to require Plaintiff to obtain court consent before filing future federal-court suits against her. Additionally, she seeks to halt Hall's current proceedings against her in the Superior Court. The Court will order Plaintiff to show cause why an injunction should not issue in federal court, but it will deny the Motion as it pertains to state court because that is the appropriate venue for Dettling to seek such relief.

I.   **Background**

Much ink has already been spilled on the dispute between Hall and Dettling. See Hall v. Nielsen, No. 18-461, 2018 WL 5840663 (D.D.C. Nov. 8, 2018); Hall v. Dep't of Homeland Sec.,

1

219 F. Supp. 3d 112 (D.D.C. 2016), aff'd sub nom. Hall v. Dettling, No. 17-7008, 2017 WL 2348158 (D.C. Cir. May 17, 2017). Just a few facts are relevant here.

DHS placed Hall on administrative leave in 2013. See ECF No. 12 (Am. Compl.), Exh. N (Facts) at 3. The agency then indefinitely suspended and eventually terminated him. Id. at 5. Believing that his firing was the result of retaliation and discrimination, Hall filed several complaints with the Equal Employment Opportunity Commission and the Merit Systems Protection Board. Id. at 5. He hired Dettling to represent him in these matters. Id. Although Hall settled with DHS during the administrative process, he believes he was given a poor deal. See, e.g., ECF No. 28 (Pl. Opp.) at 13–15. His dissatisfaction with both the underlying agreement and his representation in the matter has spurred the flurry of lawsuits that he has filed against both DHS and Dettling. See Hall, 2018 WL 5840663, at *2 (noting that Plaintiff "ha[d] filed eight cases in this jurisdiction" at time of that Opinion).

Hall's lawsuits against Dettling have not been confined to this Court. On December 30, 2016, he brought claims for legal malpractice in D.C. Superior Court. Id., App. A. These proved unsuccessful, as Judge Jennifer Di Toro granted Defendant's motion to dismiss, concluding that Plaintiff's claims were non-meritorious. Id., App. A at *8–10. Plaintiff then sued Dettling in this Court on July 2, 2018, for breach of contract, malpractice, misrepresentation, and other misconduct. See Am. Compl. at 5–7; ECF No. 8 (Mot. for Compulsory Joinder of Parties) at 2. On November 8, 2018, this Court dismissed the claims against Dettling, holding that the doctrine of claim preclusion barred most of Plaintiff's contentions because they had already been addressed and rejected by Judge Di Toro. See Hall, 2018 WL 5840663, at *3–5. Although the Court chose to deny Dettling's request for sanctions against Hall for vexatious litigation, it

2

cautioned that it might "consider a pre-filing injunction should he continue to sue Dettling for issues arising out of her legal representation." Id. at *6.

Dettling now returns to the courthouse seeking that relief. While Hall has not filed additional actions against her in <u>federal</u> court, she has "received three new complaints filed by Plaintiff in the DC Superior Court" since her federal case concluded. See ECF No. 55 (Def. Am. Mot. For Pre-Filing Inj.) at 1. The suits include claims of "Fraudulent Misrepresentation, Slander, and Libel"; "Breach of Warranty/Special Deal"; and "False Witness." See ECF No. 54 (Def. First Mot. for Pre-Filing Inj.), Exh. A (Feb. 21, 2019, Sup. Ct. Filing) at 4; Exh. B (Feb. 19, 2019, Breach of Warranty/Special Deal Sup. Ct. Filing) at 3; Def. Am. Mot., Attach. 1 (Feb. 19, 2019, False Witness Sup. Ct. Filing) at 3. Dettling argues that this evidence of vexatious litigation warrants an "[o]rder prohibiting Plaintiff from filing further claims against Defendant without prior leave of the Court." Def. Am. Mot. at 1–2. She also requests that this injunction should be presented to the D.C. Superior Court, presumably to halt the most recent round of proceedings there. Id. at 2.

## II. Analysis

Dettling seeks injunctive relief in both federal and state court. Although Hall's suits may prove equally burdensome in either forum, this Court's analysis diverges based on the venue where relief is sought. While the Motion for injunctive relief in federal court may proceed, the Motion to halt current and future state proceedings fails to clear the higher bar for federal enjoinment of state proceedings set by the Anti-Injunction Act.

### A. <u>Federal-Court Relief</u>

Dettling asks this Court to require Plaintiff, prior to filing suit against Dettling, to submit to the Court "(i) an application for leave to file suit; (ii) a copy of the accompanying order; and

3

(iii) a notarized affidavit or declaration stating that the matters raised in the lawsuit have not been raised or decided in any other lawsuit, are brought in good faith, and are not for the purpose of harassment." See Def. Am. Mot. at 2. Relief of this type is permitted under Federal Rule of Civil Procedure 11(c)(1), which allows a court to sanction parties for pleadings or motions that "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Additionally, the All Writs Act reinforces this Court's ability to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a).

Such relief, however, is not dispensed in gross. This Circuit has acknowledged that pre-filing injunctions "'remain very much the exception to general rule of free access to the courts,' and 'the use of such measures against a *pro se* Plaintiff should be approached with particular caution.'" In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988) (quoting Pavilonis v. King, 626 F.2d 1075, 1079 (1st Cir. 1980)). "In considering whether a *pro se* litigant should be enjoined from filing suit, the litigant must 'at least[] be provided with the opportunity to oppose' the injunction, and the Court must 'make substantive findings as to the frivolous or harassing nature of the litigant's actions.'" Powell v. Davis, No. 18-297, 2018 WL 5621491, at *3 (D.D.C. Oct. 30, 2018) (quoting In re Powell, 851 F.2d at 431). The appropriate next step, therefore, is to allow Hall the opportunity to oppose the pre-filing injunction sought in federal court. The Court can then make the required determination, keeping in mind "both the number and content" of Hall's filings thus far to decide if it is necessary to enjoin future federal proceedings in the manner sought. See In re Powell, 851 F.2d at 431.

B. State-Court Relief

To the extent Dettling also asks this Court to enjoin state-court proceedings, its power to issue such injunctions is further limited by the AIA and federalism principles. The AIA provides

that "[a] court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Supreme Court has held that these exceptions should be construed narrowly, and "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts." Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970). Because "the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts," any exception to the AIA must be closely scrutinized. Id.

Because there is no express authorization by Congress at issue and an injunction is not necessary to assert exclusive federal jurisdiction, enjoining a state court could only be justified under the AIA exception to "protect or effectuate [this Court's] judgments." Known as the "relitigation exception," this exception is "designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988). "If the plaintiff still could not prevail because an essential element of his state cause of action had already been determined against him in the federal suit, the relitigation exception would permit an injunction against the state proceedings." Thomas v. Powell, 247 F.3d 260, 263 (D.C. Cir. 2001). While the D.C. Circuit has not directly addressed the scope of a relitigation inquiry, a majority of circuits has held that this exception is narrower in scope than the traditional claim-preclusion inquiry. See Weyerhaeuser Co. v. Wyatt, 505 F.3d 1104, 1109–11 (10th Cir. 2007) (surveying relevant circuit cases and basing its narrow reading off Supreme Court language that "the exception applies only to 'claims or issues . . . actually decided by the federal court'") (quoting Chick Kam Choo, 486

5

U.S. at 148); but see W. Sys., Inc. v. Ulloa, 958 F.2d 864, 870–71 (9th Cir. 1992) (holding relitigation exception encompasses traditional claim-preclusion inquiry). Under the prevailing standard, "the complaining party must make a 'strong and unequivocal showing' that the same issue is being relitigated in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings." 202 N. Monroe, LLC v. Sower, 850 F.3d 265, 272 (6th Cir. 2017).

In deciding if any of the recent suits that Hall has filed in state court warrant an injunction to protect its judgments, the Court looks at whether any of the claims involve the "same issue[s]" as those previously decided in federal court. Hall has filed one complaint in Superior Court asserting causes of action for "Libel and Slander" and "Fraudulent Misrepresentation," one naming a count for "False Witness," and one alleging "Breach of Warranty/Special Deal." See Def. Am. Mot. For Pre-Filing Inj. at 1. The Court will address each in turn.

Regarding the first two complaints, neither "Libel and Slander" nor "False Witness" could be considered the same issue as the breach-of-contract, malpractice, misrepresentation, or intentional-infliction-of-emotional-distress claims that were previously litigated in federal court. See Hall, 2018 WL 5840663, at *4. Although the "Libel and Slander" and "False Witness" counts may meet the lower claim-preclusion standard for "issues that were or could have been raised," Allen v. McCurry, 449 U.S. 90, 94 (1980), they fail to clear the higher bar set by the AIA. Because the claims are different in kind, Dettling has not made the "strong and unequivocal showing [of] the same issue" that is required. Sower, 850 F.3d at 272.

"Fraudulent Misrepresentation," conversely, seems at first blush identical to the misrepresentation claim previously decided. Hall's allegations in his Superior Court complaint,

however, appear to be addressing several untrue statements about him to others rather than allegedly fraudulent statements to him. See Feb. 21, 2019, Sup. Ct. Filing at 4–5. The Court also bears in mind that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved" against the injunction. Atl. Coast Line R.R. Co., 398 U.S. at 297. Both suits consequently fail to warrant an injunction.

The suit for breach of warranty is even closer to Hall's prior breach-of-contract claim, as it appears to involve his negotiations with Dettling for a refund of attorney fees. In part because of the lack of clarity of Hall's complaint in his previously litigated case, this Court nevertheless cannot say with certainty that these are the same issues as mandated by the AIA standard. Because it is a close case and the principles of "equity, comity, and federalism" counsel against a federal injunction's interrupting a state suit after it has been commenced, Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co., 678 F.2d 552, 566 (5th Cir. 1982) (quoting Mitchum v. Foster, 407 U.S. 225, 243 (1972)), this Court will decline to issue an injunction. While courts have acknowledged that "harassment of the opposing party" through "subsequent state litigation . . . is not to be taken lightly," they have found it to be "the province of res judicata" arguments in state courts, rather than an injunction. Weyerhaeuser, 505 F.3d at 1110.

Due to the narrow standard for the relitigation exception, this Court also finds it improper to issue an injunction barring future suits in state court. The Court cannot now determine whether any future action from Hall would be a claim or issue that was "actually decided." Given that it must cautiously approach pre-injunctive relief in federal court and also considering the federalism principles involved, the Court declines to enjoin any future state-court proceedings. The D.C. Superior Court is the appropriate venue for such relief.

This Court's conclusion that it should not enjoin the state-court proceedings is hardly an endorsement of Plaintiff's litigation tactics. Far from it. In the interim, although cold comfort, Dettling must seek recourse in Superior Court. She can seek dismissal on preclusion grounds and perhaps even obtain a pre-filing injunction there. This Court, meanwhile, will consider a federal pre-filing injunction once the full arguments of the parties have been fleshed out.

## III. Conclusion

For these reasons, the Court will deny Defendant's Motion for an Emergency Injunction in part and defer a ruling in part. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 11, 2019