# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STEVEN H. HALL,

    Plaintiff,

        v.

KEVIN MCALEENAN, *et al.*,

    Defendants.

Civil Action No. 18-461 (JEB)

## MEMORANDUM OPINION

Plaintiff Steven Hall has filed a flood of *pro se* suits against Defendant Rosemary Dettling — his former attorney — as well as other parties, all arising from an employment dispute he had with the Department of Homeland Security. Undeterred by repeated dismissals of his claims, as well as warnings that sanctions would ensue should he continue filing suits, Hall has persisted in initiating claims against Dettling and others. She now seeks a pre-filing injunction against him, arguing that his suits are harassing and frivolous. Agreeing, the Court will issue such an injunction, barring Plaintiff from filing further actions about this issue without prior leave of this Court.

**I.    Background**

Hall has filed approximately nine cases in this Court and four in the D.C. Superior Court regarding his dispute with DHS and Dettling. See Hall v. Nielsen (Nielsen V), No. 19-1013; Hall v. Nielsen (Nielsen IV), No. 18-1548; Hall v. Nielsen (Nielsen III), No. 18-1283; Hall v. Nielsen (Nielsen II), the current suit, No. 18-461; Hall v. Nielsen (Nielsen I), No. 18-444; Hall v. EEOC (EEOC), 17-1469; Hall v. DOC (DOC), No. 16-1619; Hall v. DHS (DHS), No. 16-1471; Hall v. DOL (DOL), No. 16-846; Hall v. Pohlman (Pohlman), Super. Ct. No. 19-1102; Hall v.

1

Dettling (Dettling III), Super. Ct. No. 19-965; Hall v. Dettling (Dettling II), Super. Ct. No. 19-791; Hall v. Dettling (Dettling I), Super. Ct. No. 16-9316. Hall himself estimates that he has filed 40 suits and Equal Employment Opportunity Commission complaints regarding these same basic facts. See Nielsen V, ECF No. 1 (Compl.) at 20.

Plaintiff's vendetta against Dettling began in 2015. He retained her to represent him in his employment-discrimination dispute, which arose out of his suspension and ultimate termination by DHS. See Nielsen II, ECF No. 20 (Mot. to Dismiss), Exh. 1 (Dettling I (Sup. Ct. Op. Mar. 20, 2017)); Nielsen II, 2019 WL 1116911, at *1 (D.D.C. Mar. 11, 2019). Hall, with Dettling as counsel, initially contested his DHS termination in front of the Merit Systems Protection Board. During that process, Dettling advised him to accept a settlement agreement with DHS, and Hall did so on November 23, 2015. DHS, ECF No. 1 (Compl.), Exh. D (Misc. Papers) at 51–55; Dettling I at 2. After settling, however, he promptly got cold feet and revoked the settlement the next day. Dettling I at 2. A few days later, he fired Defendant as counsel. See DHS, Compl., Exh. J (Email Messages) at 120. Plaintiff, however, then had another change of heart, telling the MSPB Judge that he intended to rescind the revocation and that he would like to accept the settlement after all. See Dettling I at 2. As a result, Plaintiff was permitted to enter into the settlement agreement on December 1, 2015, and he thereby received a total of $55,000. See Nielsen II, 2019 WL 250972, at *1 (D.D.C. Jan. 17, 2019).

A month later, he again reversed course and decided he wanted out. On January 2, 2016, Hall petitioned the MSPB to review the settlement, arguing that Dettling and the MSPB Judge had coerced him into accepting the agreement. See DHS, Compl. at 16, 39, 41 (attaching Hall v. Nielsen, U.S. MSPB Docket No. 0752-14-0243-I-1). The MSPB rejected Plaintiff's petition for review on June 23, 2016, pronouncing that Hall "was not misled" and that he "knowingly and

voluntarily signed the settlement agreement, he waived further Board appeal rights concerning his removal, and the waiver is enforceable." Id. at 19–20. This would be the first of many findings that Plaintiff's claims against Defendant arising out of the DHS negotiations lacked merit.

Plaintiff resolutely forged ahead, initiating more complaints and investigations. He next complained about Dettling to the District of Columbia Bar's Office of Disciplinary Counsel on October 12, 2016, and again on November 29, 2016. See Nielsen II, ECF No. 28 (Resp. MTD), Attach. 2 (Misc. Papers) at 19, 21, 23; Dettling I at 3. Hall also filed a complaint against her regarding her representation with the D.C. Bar's Attorney/Client Arbitration Board (ACAB) in 2017. The ACAB and the D.C. Bar's Office of Disciplinary Counsel found in Defendant's favor. See Nielsen II, MTD, Exh. 2 (ACAB Papers); Nielsen II, Resp. MTD, Attach. 2 (Misc. Papers) at 22, 38.

Undiscouraged by these findings, Hall then filed suit against Dettling (as well as others) in U.S. District Court, alleging fraud, collusion, and malpractice, as well as other claims. See DHS, Compl. at 2. In that case, he again accused her of "entic[ing]" and "coerc[ing]" him into signing the settlement agreement. See DHS, Compl. at 10. In an Order issued on December 1, 2016, this Court rejected Plaintiff's theory of coercion, finding that he "eventually decided to proceed with the settlement after he had terminated Dettling's representation." DHS, 219 F. Supp. 3d 112, 115 (D.D.C. 2016), aff'd sub nom. Hall v. Dettling, No. 17-7008, 2017 WL 2348158 (D.C. Cir. May 17, 2017).

Instead of accepting the conclusions of the MSPB or this Court, Hall looked for a more sympathetic ear. He thus filed suit in the D.C. Superior Court, restating his claims that Dettling had committed fraud and misrepresentation, as well as other torts. See Dettling I at 5–9. Judge

3

Jennifer A. Di Toro rejected Plaintiff's arguments and granted Defendant's motion to dismiss these claims against her on March 20, 2017. Id. at 9.

His business still unfinished, Plaintiff next filed suit against Dettling in this Court on February 27, 2018, again alleging the same torts he had previously raised — namely, malpractice and misrepresentation. See Nielsen II, 2018 WL 5840663, at *4 (D.D.C. Nov. 8, 2018). On November 8, 2018, this Court granted Dettling's motion to dismiss and cautioned Hall that it would "consider a pre-filing injunction" should he continue to file suits against Dettling. Id. at *6.

Hall has not heeded this warning. After receiving this Court's admonition, he set in motion three more suits against Dettling in the Superior Court. She responded by filing the current Motion for a Pre-Filing Injunction. Nielsen II, 2019 WL 1116911, at *1–2. This Court initially refused to enjoin the proceedings in Superior Court, explaining that the stringent standards set by the Anti-Injunction Act had not been met. Id. at *2–4. Regarding an injunction in this Court, however, the Court deferred a decision in order to give Plaintiff an opportunity to respond. Id. at *2. Hall then replied in his "Show Cause" memorandum of April 2. See Nielsen II, ECF No. 59 (Resp. Mem. Op.). This memorandum primarily reiterated his list of grievances against Dettling. Id. The pre-filing injunction issue is now ripe for decision.

**II.     Analysis**

Given this confluence of actions, largely against an individual, the Court must decide whether a pre-filing injunction is warranted to finally terminate Hall's conduct. Such injunctions are an extreme sanction and are a limited exception to the "general rule of free access to the courts." In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988) (quoting Pavilonis v. King, 626 F.2d 1075, 1079 (1st Cir. 1980)). Pre-filing injunctions should be used sparingly, especially against

4

*pro se* plaintiffs. Id. (citing Pavilonis, 626 F.2d at 1079). The court, however, has the duty and authority to issue injunctions "to protect the integrity of the courts and the orderly and expeditious administration of justice." Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985). Because courts have "the inherent power and the constitutional obligation to protect their jurisdiction from conduct that impairs their ability to carry out Article III functions," they can impose pre-filing injunctions both in response to the filings of a party or *sua sponte*. See Baum v. Blue Moon Ventures, LLC, 513 F.3d 181, 189 (5th Cir. 2008) (quoting In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984)).

When considering an injunction, a court must first ensure that the plaintiff has "notice and an opportunity to be heard." Unitronics (1989) (R"G) Ltd. v. Gharb, 85 F. Supp. 3d 118, 130 (D.D.C. 2015) (quoting In re Powell, 851 F.2d at 431). Once that has been accomplished, courts should assess the volume of a plaintiff's filings and the extent to which they are harassing or frivolous. See Caldwell v. Obama, 6 F. Supp. 3d 31, 50–52 (D.D.C. 2013). The court will analyze these issues in turn.

    A. Notice

A court may not issue a pre-filing injunction without offering its target notice and an opportunity to be heard. See In re Powell, 851 F.2d at 431. If the target receives a motion to dismiss or a show-cause order, that typically constitutes sufficient notice. See, e.g., Smith v. Scalia, 44 F. Supp. 3d 28, 46 (D.D.C. 2014). Courts have likewise found that a plaintiff's filing of an opposition memorandum evidences notice. See Rodriguez v. Shulman, 844 F. Supp. 2d 1, 15 (D.D.C. 2012) (holding plaintiffs had opportunity to be heard regarding injunction when they submitted opposition brief).

Here, there can be little question that Hall has been given appropriate notice. The Court's Memorandum Opinion of March 11, 2019, instructed him to show cause why an injunction should not issue, Nielsen II, 2019 WL 1116911, at *1–2, and he has indeed responded via his Opposition. See Nielsen II, Resp. Mem. Op.

B. Volume of Filings

The Court next considers the "number and content" of the litigant's previous filings. See In re Powell, 851 F.2d at 431. Such volume involves both the number of suits and the number of claims within a suit. While the quantity of meritless suits is not the dispositive factor in granting an injunction, it is a relevant benchmark. Courts in this district have granted injunctions in cases involving the filing of 11, 15, and 16 actions. See Urban, 768 F.2d at 1498–99 (16); Smith, 44 F. Supp. 3d at 31–33 (11); Kaufman v. IRS, 787 F. Supp. 2d 27, 29 (D.D.C. 2011) (15). Meritless suits, however, need not reach double digits before an injunction will be granted. See, e.g., Davis v. United States, 569 F. Supp. 2d 91, 93, 99 (D.D.C. 2008) (granting injunction after filing of four "essentially identical" suits); Caldwell, 6 F. Supp. 3d at 41, 51 (granting injunction after filing of five "meritless" suits); Powell v. Davis, No. 18-297, 2018 WL 5621491, at *4–5 (D.D.C. Oct. 30, 2018) (allowing injunction after nine frivolous and harassing suits). His filings are thus voluminous enough to be atypical, disruptive, and worthy of sanction.

In addition, courts in this jurisdiction have looked at the total number of cases regarding the same general issue no matter the forum in which they have been filed. See Powell, 2018 WL 5621491, at *4 (determining total volume of nine suits by aggregating suits in D.C. Superior Court and D.D.C.); U.S. Bank Nat'l Assoc. v. Poblete, No. 15-312, 2017 WL 598471, at *8 (D.D.C. Feb. 14, 2017) (same). In other words, it is appropriate to look at actions Hall has filed outside this federal court. In this instance, Plaintiff has filed at least nine cases in this Court and

four in the Superior Court, for a grand total of thirteen.  See infra Section I.  This cumulative number supports granting an injunction.

Even if the number of suits is limited, a deluge of frivolous motions can also support a pre-filing injunction.  See Kaempfer v. Brown, No. 88-7102, 1989 WL 45103, at *3 (D.C. Cir. May 2, 1989); see also Caldwell, 6 F. Supp. 3d at 50–51 (upholding injunction when plaintiff litigated five cases involving over 100 court filings).  In addition to bringing cases, Hall is not stingy in his motions practice.  In DHS, he filed around 17 motions, which were often repetitive and frivolous.  For example, he moved to transfer the case after it had already been terminated.  See DHS, ECF No. 73.  Likewise, the current case has involved around 19 motions by Hall, including meritless ones for the Court to "reconsider" past orders and reopen other cases.  See Nielsen II.  These frequent motions inappropriately monopolize the time and resources of the Court.  This factor therefore supports an injunction.

C. Harassment

The volume of claims, while relevant, is not necessarily determinative.  See Speleos v. McCarthy, 201 B.R. 325, 330 (D.D.C. 1996) (holding frequency of suits alone cannot support pre-filing injunction because of insufficient showing that suits were "frivolous or harassing"); In re Yelverton, 526 B.R. 429, 433 (D.D.C. 2014) ("The volume of filings alone would not be determinative if his arguments and assertions were generally colorable."); Caldwell, 6 F. Supp. 3d at 51 ("[T]he requisite finding of harassment or vexatiousness does not rest solely on some arbitrary threshold number of lawsuits filed but rather must also take account of the repetitiveness and nature of the claims.").  The Court, therefore, must assess the harassing content of the claims.

In such analysis, courts examine whether the filings aim to "harass a particular adversary." In re Powell, 851 F.2d at 431. A plaintiff's decision to cycle between different defendants, however, does not represent a sufficient rebuttal to arguments that his claims are harassing. See Smith, 44 F. Supp. 3d at 47 (affirming pre-filing injunction when plaintiff targeted various judges); Powell, 2018 WL 5621491, at *4 ("[Naming] different defendants" does not make plaintiff's suits "less frivolous" or "less harassing" because "[h]is legal theory hasn't changed[,] . . . and he is not entitled to as many bites at the apple as there are different defendants he can somehow include in the case caption.").

The number and "tone" of the filings is also relevant in deciding if the claims are harassing. See Smith, 44 F. Supp. 3d at 47 ("[T]he tone of Plaintiff's successive suits dispels all doubt about the vexing nature of his pleadings."). In assessing tone, the court should consider whether the plaintiff's motions use improper language and whether he has employed inappropriate litigation strategies. Id. (holding that filings were harassing for use of "abusive language" and "disrespectful litigation practices") (citation omitted).

To determine whether a plaintiff's actions are harassing, moreover, "the court should consider the effect of the filings on the parties and the court." Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co., 271 F. Supp. 2d 142, 148 (D.D.C. 2003). Likewise, "forcing the defendants to spend resources litigating previously-resolved claims" constitutes harassment. Id. at 149. The court should also look for evidence that defendants "feel harassed," which often appears in motions to prohibit the plaintiff from additional filings. Id.

Plaintiff's actions here are clearly harassing, as they have consistently targeted both Dettling and DHS. His filings are also manifestly vexatious in tone. Hall's claims have been repeated and clearly intend to badger Defendants. Plaintiff's memorandum in opposition to an

injunction expressly states his intent to relitigate arguments and accusations against Dettling upon which courts have already ruled. See Nielsen II, Resp. Mem. Op.; Nielsen II, 2019 WL 1116911, at *1. His filings have also contained "disparaging language." Nielsen II, 2018 WL 5840663, at *6. Plaintiff has sent her a variety of harassing messages that contain crude and inappropriate language. In fact, Dettling informs the Court that he and his previous counsel, Glenn Stephens, collectively "have sent Defendant over a hundred accusatory and threatening emails in the last three years." Nielsen II, ECF No. 30 (First Mot. Sanctions) at 3. One email sent to Defendant by Plaintiff reads that she "should permanently be disbarred and ran out of this metropolitan area. Rosemary has a very EVIL heart. Do not know how she sleep at night." First Mot. Sanctions, Exh. C (Hall Emails) at 1. Another email Plaintiff sent to Dettling noted that "[y]our like a tick, but you suck out the money of your clients . . . You never give a damn about your clients because your greed for more money distinguish you an attorney that ultimate concern is to cheat, rip-off, ill-advise, and misrepresent your clients . . . Really don't know how you sleep at night, that's what making you sick." First Mot. Sanctions, Exh. D (Hall Emails 2) at 2. The indecorous tone of Hall's filings and communications favors concluding that his actions are harassing.

Plaintiff's actions have also indubitably burdened Defendants. This Court has previously expressed sympathy with Dettling regarding her "continual efforts to defend herself from suit." Nielsen II, 2018 WL 5840663, at *6. Defendant's motions for a pre-filing injunction manifest the harassing effect of Plaintiff's actions. Additionally, Dettling's status as an individual defendant requires special consideration by the Court. In this case, the latitude the Court should give a *pro se* plaintiff such as Hall is circumscribed by the effect of these actions on

an individual defendant who has been forced to defend against a multitude of challenges. This gives the Court further reason to conclude that Plaintiff's actions have negatively affected her.

Hall's "barrage of suits" also strains the resources of the Court. Id. at *1. His explicit intention to rehash claims upon which courts have already spoken impedes "the orderly and expeditious administration of justice." Mikkilineni, 271 F. Supp. 2d at 148. In considering the burden of a plaintiff's filings, courts can also consider the number of appeals filed. See Urban, 768 F.2d at 1499. Plaintiff has indeed peppered the courts with multiple challenges and appeals. See DOC, 2018 WL 2002483 (D.D.C., Apr. 30, 2018) (Hall challenged findings of Magistrate Judge Harvey); DHS, 219 F. Supp. 3d 112 (D.D.C. 2016), aff'd, Hall v. Dettling, No. 17-7008, 2017 WL 2348158 (D.C. Cir., May 17, 2017), reh'g & reh'g en banc denied (D.C. Cir., July 7, 2017). Plaintiff has also attempted to reopen closed cases multiple times. See Nielsen II, ECF No. 28 (Resp. Mot. Dismiss) at 11 (noting Plaintiff twice attempted to reopen Superior Court case). These continuous challenges interfere with the Court's ability to address the meritorious claims of other litigants. The deleterious effects of Plaintiff's filings on both the parties and the Court thus favor imposing an injunction.

D. Frivolousness

To establish the frivolousness of a plaintiff's suit, a court must consider whether his actions advance "the same basic theory" that is conclusively meritless. See Powell, 2018 WL 5621491, at *5 (granting injunction when plaintiff was given "repeated admonitions that his claims lack legal merit"); Davis, 569 F. Supp. 2d at 99 (issuing injunction after repetitive filing of "essentially identical" claims). A court must look for a "clear pattern" of "strikingly similar allegations" in which the plaintiff "propounds substantially the same legal arguments." Smith,

10

44 F. Supp. 3d at 46. These claims need not be identical, so long as the plaintiff's "legal theories and the gravamen of the complaints remain the same." Id. at 47.

Injunctions have been granted for extremely severe as well as more mild instances of frivolous claims. Examples of the former include a case in which the plaintiffs challenged the basic legitimacy of the IRS and made numerous fillings in which they purported to give court orders, signed as "common law magistrates" and "private attorney generals." Kaufman, 787 F. Supp. 2d at 29. Injunctions have also been granted for actions and motions that are merely repetitive and meritless. See Powell, 2018 WL 5621491, at *5 (granting injunction for repetitive filings); Mikkilineni, 271 F. Supp. 2d at 148–49 (barring plaintiff from filing further suits after duplicative filings).

Hall's claims are conclusively frivolous. His filings "propound[] substantially the same legal arguments" that lack merit. See Smith, 44 F. Supp. 3d at 46. While there is some variation in his claims, they advance "the same basic theory" and revolve around the same core issue — namely, his termination from his employment at DHS and Dettling's representation. See Powell, 2018 WL 5621491, at *4. His "legal theories" and the "gravamen of the complaints" are essentially consistent regarding the purported misconduct of DHS and Dettling. See Smith, 44 F. Supp. 3d at 47.

Hall has been affirmatively informed on multiple occasions that his allegations are infirm. See Nielsen II, 2019 WL 1116911 at *1 ("Judge Jennifer Di Toro granted Defendant's motion to dismiss, concluding that Plaintiff's claims were non-meritorious."); cf. In re Powell, 851 F.2d at 432; Stankevich v. Kaplan, 156 F. Supp. 3d at 98 (D.D.C. 2016). Not only was Plaintiff expressly told by Judge Di Toro that his claims lacked merit, he was also explicitly

warned by this Court that continuing to file against Dettling would have consequences.  See Nielsen II, 2018 WL 5840663, at *6.  These elements therefore also favor granting an injunction.

E. Scope of Injunction

Hall's filings, both in terms of volume and content, easily fall within the range of conduct that courts in this district have sanctioned with pre-filing injunctions.  The totality of the circumstances, in this case, evidence Plaintiff's disregard and disrespect for "the orderly and expeditious administration of justice."  Urban, 768 F.2d at 1500.  An injunction will therefore issue.

The Court must also decide the injunction's scope.  Plaintiff could be enjoined from filing any suit in courts in this district or in any other federal court.  Id. (barring plaintiff from filing in this court or "any other federal court"); Mikkilineni, 271 F. Supp. 2d at 143 (barring plaintiff from filing in this court without leave).  As far as substantive scope, Plaintiff could be enjoined from filing without leave of the Court against any Defendant related to this dispute or any defendant at all.  See Powell, 2018 WL 5621491, at *5 (barring plaintiff from filing anything related to a specific dispute); Urban, 768 F.2d at 1500 (barring plaintiff from any filing).  The bottom line is that the scope of an injunction is within the discretion of the Court.

It believes that the most sensible path is to bar Plaintiff from filing suit in any federal court against Dettling or any other party regarding the DHS dispute or her representation without leave of this Court.  This injunction will not unduly encumber Hall's right to "free access to the courts" in relation to other legal claims, as the injunction will not be a total bar against all filings.  See In re Powell, 851 F.2d at 431.  Prior permission of the Court will be required only when filing in federal court about his DHS grievances or Dettling's representation.

### III. Conclusion

For these reasons, the Court will grant Defendant's Motion for a Pre-Filing Injunction. A separate Order so stating will issue this day.

/s/ James E. Boasberg  
JAMES E. BOASBERG  
United States District Judge

Date: June 21, 2019